FILED

2012 Mar-06  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, National Association, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| D&B FARM CENTER, LLC, GREGORY S. DENNEY, and JERRELL BRANCH | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff Wells Fargo Bank, National Association ("Wells Fargo"), successor-by-merger to Wachovia Bank, National Association hereby states as follows for its complaint against Defendants D&B Farm Center, LLC, Gregory Denney, and Jerrell Branch:

1.     Wells Fargo is a national association with its main office, as listed in its Articles of Association, in South Dakota, and its principal place of business in California.  Wells Fargo is the owner and holder of all loan documents described and referenced herein, and the party entitled to enforce the same.

2.     D&B Farm Center, LLC ("D&B") is a limited liability corporation organized pursuant to the laws of the State of Alabama with its principal place of business in Huntsville, Alabama.  Upon information and believe, the members of

D&B are all individual residents of the State of Alabama.

3.      Gregory Denney ("Denney") is an adult citizen of the State of Alabama.

4.      Jerrell Branch ("Branch") is an adult citizen of the State of Alabama.

## Jurisdiction and Venue

5.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.   There is diversity between the parties and the amount in controversy exceeds $75,000.00.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

## Facts

7.      On or about May 29, 2007 Wells Fargo made a loan to D&B and Denney in the original principal amount of $150,000.00 ("Loan I").

8.      Loan I is evidenced by that certain Promissory Note dated May 29, 2007, made by D&B and Denney payable to Wells Fargo in the original principal amount of $150,000.00, (as assumed, amended and modified from time to time, collectively, "Note I").   A true and correct copy of Note I is attached hereto as **Exhibit A**.

9.      Loan I is secured, in part, by that certain Mortgage and Assignment of Rents dated May 29, 2007, executed by D&B in favor of Wells Fargo and recorded

2

in the Office of the Judge of Probate of Clay County, Alabama (the "Recording Office") on June 12, 2007, at Book 314, Page 297 (as assumed, amended, and modified from time to time, "Mortgage I"). A true and correct copy of Mortgage I is attached hereto as **Exhibit B**.

10. Loan I is further secured by that certain Unconditional Guaranty agreement dated May 29, 2007, executed by Branch in favor of Wells Fargo (the "Guaranty Agreement"), by which Branch unconditionally guaranteed the timely payment and performance of all liabilities and obligations of D&B and Denney to Wells Fargo. A true and correct copy of the Guaranty Agreement is attached hereto as **Exhibit C**.

11. Loan I is further secured by that certain Security Agreement dated May 29, 2007, executed by D&B in favor of Wells Fargo (the "Security Agreement I") pursuant to which D&B granted Wells Fargo a security interest in certain property more particularly described therein. A true and correct copy of the Security Agreement I is attached hereto as **Exhibit D.**

12. On or about May 29, 2007, Wells Fargo made a loan to D&B and Denney in the amount of $50,000.00 ("Loan II").

13. Loan II is evidenced by that certain Promissory Note dated May 29, 2007, made by D&B and Denney payable to Wells Fargo in the original principal amount of $50,000.00 (as assumed, amended and modified from time to time,

3

"Note II").  A true and correct copy of Note II is attached hereto as **Exhibit E**.

14.   Loan II is secured, in part, by that certain Mortgage and Assignment of Rents dated May 29, 2007, executed by D&B in favor of Wells Fargo, and recorded in the Recording Office on June 12, 2007, at Book 314, Page 309 (as assumed, amended, and modified from time to time, "Mortgage II").  A true and correct copy of Mortgage II is attached hereto as **Exhibit F**.

15.   Loan II is further secured that certain Security Agreement dated May 29, 2007, executed by D&B in favor of Wells Fargo (the "Security Agreement II") pursuant to which D&B granted Wells Fargo a security interest in certain property more particularly described therein.  A true and correct copy of the Security Agreement II is attached hereto as **Exhibit G**.

16.   Loan II is further secured the Guaranty Agreement.

17.   On or before February 2011, events of default had occurred and were continuing to occur under the Loan Documents (the "Events of Default"), including but not limited to D&B and Denney failing to make payments as required under the Loan Documents.

18.   As a result of the Events of Default, Wells Fargo declared the Notes to be in default, accelerated the indebtedness due under Notes I and II, and demanded repayment of the Notes in full pursuant to a Notice of Default and Demand for Payment letter dated February 24, 2011.  A true and correct copy of this demand

4

letter is attached hereto as **Exhibit H**.

19.     As a result of D&B and Denney's failure to cure its defaults and pay the outstanding indebtedness due under the Notes, Wells Fargo reiterated its default notice by letter dated September 28, 2011.  A true and correct copy of this letter is attached hereto as **Exhibit I**.

<u>The Outstanding Indebtedness</u>

20.     As of February 27, 2012, the outstanding indebtedness due under Note I was $117,145.93.   This debt consisted, in part, of $102,999.74 in unpaid principal, $5,841.37 in accrued and unpaid interest, $714.16 in late fees, and unpaid expenses in the amount of $7,590.66.   Interest accrues on the unpaid principal at the per diem rate of $21.32 per day.

21.     As of February 27, 2012, the outstanding indebtedness due under Note II was $31,755.54.  This debt consisted, in part, of $30,833.41 in unpaid principal, $605.32 in accrued and unpaid interest, and late fees of $316.82.  Interest accrues on the unpaid principal at the per diem rate of $2.36 per day.

22.     In addition, pursuant to the Loan Documents, D&B, Denney, and Branch are obligated to pay Wells Fargo all costs it incurs in enforcing its rights in collecting the outstanding indebtedness under the Loan Documents, including but not limited to attorneys' fees, costs of collection, and court costs.

B MHC01 1007444 v2
1039341-000490  03/06/2012

## Count I- Breach of the Notes

23.    Wells Fargo incorporates by reference the allegations set forth above as if set forth fully herein.

24.    D&B and Denney have failed to repay the amounts due and owing under the Notes.

25.    As of February 27, 2012, D&B and Denney owed Wells Fargo, under the terms of the Notes, the total sum of $148,901.47 in combined principal, interest, and late fees, plus costs of collection and reasonable attorneys' fees. Interest continues to accrue on the unpaid balances of the Notes from and after February 27, 2012.

26.    Pursuant to the Notes, Wells Fargo is entitled to collect from D&B and Denney its reasonable attorneys' fees and costs incurred in enforcing its rights under Notes.

27.    All conditions precedent to the bringing of this action have been performed by Wells Fargo or have otherwise occurred.

**WHEREFORE**, Wells Fargo hereby demands judgment against D&B and Denney, jointly and severally, for all amounts due and owing under the Notes, in an amount not less than $148,901.47, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Notes, and all attorneys' fees and court costs incurred by Wells Fargo in enforcing its

B MHC01 1007444 v2
1039341-000490  03/06/2012

rights under the Notes, and all other legal and equitable relief the court deems proper and just.

## Count II - Breach of the Guaranty Agreement

28.     Wells Fargo incorporates by reference the allegations set forth above as if set forth fully herein.

29.     Pursuant to the terms of the Guaranty Agreement, Branch guaranteed all obligations of D&B and Denney to Wells Fargo, including D&B and Denney's obligation to repay the outstanding indebtedness due under the Notes.

30.     Branch have breached their obligations under the Guaranty Agreement by failing to pay Wells Fargo the monies due under the Notes.

31.     Pursuant to the Guaranty Agreement, Wells Fargo is entitled to collect from Branch its reasonable attorneys' fees and costs incurred in enforcing its rights under the Notes and Guaranty Agreement.

**WHEREFORE**, Wells Fargo hereby demands judgment against Branch, for all amounts due and owing under Notes and Guaranty Agreement, in an amount not less than $148,901.47, together with and including, without limitation, interest accruing at the default rate pursuant to the terms of the Notes, and all attorneys' fees and court costs incurred by Wells Fargo in enforcing its rights under Notes and Guaranty Agreement, and all other legal and equitable relief the court deems proper and just.

B MHC01 1007444 v2
1039341-000490  03/06/2012

_____
ERIC L. PRUITT
W. PATTON HAHN
MARIANNE H. COMBS
Attorneys for Wells Fargo Bank, N.A.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
420 20th Street North
1400 Wells Fargo Tower
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007

## **DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

D & B Farm Center
12075 County Road 5
Ashland, Alabama  36251

Gregory Scott Denney
12134 County Road 5
Ashland, Alabama  36251

Jerrell Branch
11920 County Road 5
Ashland, Alabama  36251

B MHC01 1007444 v2
1039341-000490  03/06/2012

# EXHIBIT A

# PROMISSORY NOTE

$150,000.00

May 29, 2007

D & B Farm Center, L.L.C.
12075 County Road 5
Ashland, Alabama 36251

Gregory Scott Denney
12134 County Road 5
Ashland, Alabama 36251
(Individually and collectively, "Borrower")

Wachovia Bank, National Association
Birmingham, Alabama 35203
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America by mailing to the address specified hereinafter or wherever else Bank may specify, the sum of One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**USE OF PROCEEDS.** Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows. Refinance Debt

**SECURITY.** D & B Farm Center, L.L.C. has granted Bank a security interest in the collateral described in the Loan Documents, including, but not limited to, real and personal property collateral described in that certain security instrument of even date herewith and personal property collateral described in that certain Security Agreement of even date herewith.

**INTEREST RATE.** Interest shall accrue on the unpaid principal balance of this Note from the date hereof at the rate of 7.45% ("Interest Rate").

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs and as long as a Default continues, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from demand until the Obligations or any judgment thereon is paid in full.

**INTEREST AND FEES(S) COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

**PREPAYMENT ALLOWED.** This Note may be prepaid in whole or in part at any time. Any prepayment shall include accrued interest and all other sums then due under any of the Loan Documents (as defined below). No partial prepayment shall affect Borrower's obligation to make any payment of principal or interest due under this Note on the date specified below in the Repayment Terms paragraph of this Note until this Note has been paid in full.

**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of principal and interest in the amount of $1,785.54 commencing on June 29, 2007, and continuing on the same day of each month thereafter until fully paid. In any event, all principal and accrued interest shall be due and payable on May 29, 2017.

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. **False Warranty.** A warranty or representation made or deemed made in the Loan Documents or furnished Bank in connection with the loan evidenced by this Note proves materially false, or if of a continuing nature, becomes materially false. **Cross Default.** At Bank's option, any default in payment or performance of any obligation under any other loans, contracts or agreements of Borrower, any Subsidiary or Affiliate of Borrower, any general partner of or the holder(s) of the majority ownership interests of Borrower with Bank or its affiliates ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time, except that the term "Borrower" shall be substituted for the term "Debtor" therein; "Subsidiary" shall mean any business in which Borrower holds, directly or indirectly, a controlling interest). **Cessation; Bankruptcy.** The death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Borrower, its Subsidiaries or Affiliates, if any, or any general partner of or the holder(s) of the majority ownership interests of Borrower, or any party to the Loan Documents. **Material Capital Structure or Business Alteration.** Without prior written consent of Bank, (i) a material alteration in the kind or type of Borrower's business or that of Borrower's Subsidiaries or Affiliates, if any; (ii) the sale of substantially all of the business or assets of Borrower, any of Borrower's Subsidiaries or Affiliates or any guarantor, or a material portion (10% or more) of such business or assets if such a sale is outside the ordinary course of business of Borrower, or any of Borrower's Subsidiaries or Affiliates or any guarantor, or more than 50% of the outstanding stock or voting power of or in any such entity in a single transaction or a series of transactions, (iii) the acquisition of substantially all of the business or assets or more than 50% of the outstanding stock or voting power of any other entity; or (iv) should any Borrower or any of Borrower's Subsidiaries or Affiliates or any guarantor enter into any merger or consolidation. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Obligations are impaired or there has occurred a material adverse change in the business or prospects of Borrower, financial or otherwise.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note or any Loan Documents, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Obligations under any swap agreement as referenced above) shall automatically and immediately be due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all

other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower, and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations. **Organization; Powers.** Borrower represents that Borrower (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.** Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its properties, operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C. § 3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable. None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC. The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.** This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and interpreted the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.** Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates. **Swap Agreements.** All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written

provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement. **Jurisdiction.** Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above. **Severability.** If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Payments.** All payments shall be mailed to Bank at Commercial Loan Services, P. O. Box 740502, Atlanta, GA  30374-0502; or other such address as provided by Bank in writing. **Notices.** Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA  24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA  24011 or such other address as Bank may specify in writing from time to time.  Notices to Bank must include the mail code.  In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid.  **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity   The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents  **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof.  **Posting of Payments.** All payments received during normal banking hours after 2:00 p.m. local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day.  **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations.  **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time.  **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES.   EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.  **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  For purposes of this section, account shall be understood to include loan accounts.  **Final Agreement.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties.  There are no unwritten agreements between the parties.

**WAIVER OF JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH

RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE   EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

D & B Farm Center, L.L.C.

By: _Jerrell Branch, Member_ _____ (SEAL)
Jerrell Branch, Member

By: _Gregory Scott Denney, Member_ _____ (SEAL)
Gregory Scott Denney, Member

_____ (SEAL)
Gregory Scott Denney

CAT - Deal # 1576169528  Facility ID 1576169734

EXHIBIT B

JUN 1 2 2007

PREPARED BY: Kathy Giller
RETURN TO: Wachovia Bank, National Association
Commercial Loan Services
Collateral Servicing Department NC6038
P.O. Box 2705
Winston Salem, NC 27199-8182

BLEST     314     297
Recorded In Above Book and Page
06/06/2007 11:51:32 AM
George M. Ingram
Judge of Probate
Clay County, AL

Mortgage Tax        225.00
Recording Fee        81.50
TOTAL               306.50

# MORTGAGE AND ASSIGNMENT OF RENTS

This MORTGAGE AND ASSIGNMENT OF RENTS (hereafter referred to as "Mortgage") made May 29, 2007, by and between Wachovia Bank, National Association, a national banking association, whose address is Birmingham, Alabama  35203 ("Bank"), and D & B Farm Center, L.L.C., whose address is 12075 County Road 5, Ashland, Alabama  36251 ("Mortgagor")   Bank is the mortgagee hereunder for indexing purposes by the judge of probate.

## W I T N E S S E T H :

To secure payment and performance of obligations under a Promissory Note (the "Note") dated May 29, 2007, in the amount of $150,000.00, made by D & B Farm Center, LLC and Gregory Scott Denney (the "Borrower") payable to Bank, this Mortgage), any present or future Letters of Credit issued by Bank for the account of Borrower, other loan documents as defined in the Note (the "Loan Documents"), and swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), all other indebtedness of Borrower to Bank whenever borrowed or incurred, whether or not reasonably contemplated by the parties hereto as of the date hereof, and any renewals, extensions, novations, or modifications of the foregoing (collectively the "Obligations"), and in consideration of these premises and for other consideration, Mortgagor does mortgage, grant, bargain, sell and convey, with power of sale unto Bank (for itself and its affiliates), its successors and assigns all of Mortgagor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"): (i) all those certain tracts of land in the County of Clay, State of Alabama described in EXHIBIT A attached hereto and made part hereof (the "Land"); (ii) all buildings and improvements now or hereafter erected on the Land; (iii) all fixtures attached to the Land or any buildings or improvements situated thereon, and (iv) all estates, rights, tenements, hereditaments, privileges, rents, issues, profits easements, and appurtenances of any kind benefiting the Land, all means of access to and from the Land, whether public or private, and all water and mineral rights.

In the event that Mortgagor is the owner of a leasehold estate with respect to any portion of the Property and Mortgagor obtains a fee estate in such portions of the Property, then, such fee estate shall automatically, and without further action of any kind on the part of the Mortgagor, be and become subject to the security title and lien of this Agreement.

TO HAVE AND TO HOLD the Property and all the estate, right, title and interest, in law and in equity, of Mortgagor's in and to the Property unto Bank, its successors and assigns, forever.

Mortgagor WARRANTS AND REPRESENTS that Mortgagor is lawfully seized of the Property, in fee simple, absolute, that Mortgagor has the legal right to convey and encumber the same, and that the Property is free and clear of all liens and encumbrances.  Mortgagor further warrants and will forever defend all and singular the Property and title thereto to Bank and Bank's successors and assigns, against the lawful claims of all persons whomsoever

PROVIDED ALWAYS that if (i) all the Obligations (including without limitation, all termination payments and any other amounts due under or in connection with any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) secured hereunder) are paid in full, (ii) each and every representation, warranty, agreement, covenant and condition of this Mortgage, and the other Loan Documents, are complied with and abided by, and (iii) any and all swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) secured hereunder have matured or been terminated, then this Mortgage and the estate hereby created shall cease and be null, void, and canceled of record.

To protect the security of this Mortgage, Mortgagor further represents and agrees with Bank as follows:

**Payment of Obligations.** That the Obligations shall be timely paid and performed.

**Future Advances.** This Mortgage is given to secure not only existing Obligations, but also future advances, including obligations under swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) to the same extent as if such future advances and obligations under swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) are made on the date of the execution of this Mortgage. The principal amount (including any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) and future advances) that may be so secured may decrease or increase from time to time, but the total amount so secured at any one time shall not exceed $150,000.00, plus all interest, costs, reimbursements, fees and expenses due under this Mortgage and secured hereby. Mortgagor shall not execute any document that impairs or otherwise impacts the priority of any existing or future Obligations secured by this Mortgage.

Nothing herein obligates Bank to provide credit in excess of the Obligations.

**Leases, Subleases and Easements.**   Mortgagor shall maintain, enforce and cause to be performed all of the terms and conditions under any lease, sublease or easement which may constitute a portion of the Property.  Mortgagor shall not, without the consent of Bank (which consent shall not be unreasonably withheld or delayed), enter into any new lease of all or any portion of the Property, agree to the cancellation or surrender under any lease of all or any portion of the Property, agree to prepayment of rents, issues or profits (other than rent paid at the signing of a lease or sublease), modify any such lease so as to shorten the term, decrease the rent, accelerate the payment of rent, or change the terms of any renewal option; and any such purported new lease, cancellation, surrender, prepayment or modification made without the consent of Bank shall be void as against Bank.

**Required Insurance.**  Mortgagor shall maintain with respect to the Property:  (i) during construction of any improvements on the Property, "all-risk" builders risk insurance which must include windstorm, hail damage, fire and vandalism (non-reporting Completed Value with Special Cause of Loss form), in an amount not less than the completed replacement value of the improvements under construction, naming Bank as mortgagee and loss payee; (ii) upon completion of construction, upon occupancy of any improvements, and at all other times, insurance against loss or damage by fire and other casualties and hazards by insurance written on an "all risks" basis, including malicious mischief coverage, in an amount not less than the replacement cost thereof, including coverage for loss of rents or business interruption if applicable, naming Bank as loss payee and mortgagee; (iii) if the Property is required to be insured pursuant to the National Flood Reform Act of 1994, and the regulations promulgated thereunder, flood insurance is required in the amount equal to the lesser of the loan amount or maximum available under the National Flood Insurance Program, but in no event should the amount of coverage be less than the value of the improved structure, naming Bank as mortgagee and loss payee. If, after closing, the Property (or any part thereof) is remapped and if the vertical improvements are determined to be located in a special flood hazard area, Mortgagor must obtain and maintain a flood insurance policy.  If, within forty-five (45) days of receipt of notification from Bank that the Property has been reclassified by FEMA as being located in a special flood hazard area, Mortgagor has not provided sufficient evidence of flood insurance, Bank is mandated under federal law to purchase flood insurance on behalf of Mortgagor, and Bank will add the associated costs to the principal balance of the Note.  If the land or any portion thereof is located in a special flood hazard area, this Agreement may be terminated by

RLEST   314   299

Bank at its sole option; (iv) as applicable, insurance which complies with the workers' compensation and employers' liability laws of all states in which Mortgagor shall be required to maintain such insurance; and (v) liability insurance providing coverage in such amount as Bank may require but in no event less than $1,000,000.00 combined single limit, naming Bank as an additional insured; and (vi) such other insurance as Bank may require from time to time.

All property insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Bank that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Mortgagor and the further agreement (within both the property and liability policies) of the insurer waiving rights of subrogation against Bank, and rights of set-off, counterclaim or deductions against Mortgagor

All insurance policies shall be in form, provide coverages, be issued by companies and be in amounts satisfactory to Bank. At least 30 days prior to the expiration of each such policy, Mortgagor shall furnish Bank with evidence satisfactory to Bank that such policy has been renewed or replaced or is no longer required hereunder. All such policies shall provide that the policy will not be canceled or materially amended without at least 30 days prior written notice to Bank. In the event Mortgagor fails to provide, maintain, keep in force, and furnish to Bank the policies of insurance required by this paragraph, Bank may procure such insurance or single-interest insurance in such amounts, at such premium, for such risks and by such means as Bank chooses, at Mortgagor's expense, provided however, Bank shall have no responsibility to obtain any insurance, but if Bank does obtain insurance, Bank shall have no responsibility to assure that the insurance obtained shall be adequate or provide any protection to Mortgagor

**Insurance Proceeds.** After occurrence of any loss to any of the Property, Mortgagor shall give prompt written notice thereof to Bank.

In the event of such loss all insurance proceeds, including unearned premiums, shall be payable to Bank, and Mortgagor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Bank and not to Bank and Mortgagor jointly. Bank is hereby authorized by Mortgagor to make proof of loss if not promptly made by Mortgagor, settle, adjust or compromise any claims for loss or damage under any policy or policies of insurance and Mortgagor appoints Bank as its attorney-in-fact to receive and endorse any insurance proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied. Mortgagor shall pay the costs of collection, including attorneys' fees, of insurance proceeds payable on account of such damage or destruction. Mortgagor shall have no claim against the insurance proceeds, or be entitled to any portion thereof, and all rights to the insurance proceeds are hereby assigned to Bank as security for payment of the Obligations.

In the event of any damage to or destruction of the Property, Bank shall have the option of applying or paying all or part of the insurance proceeds to (i) the Obligations in such order as Bank may determine, (ii) restoration, replacement or repair of the Property in accordance with Bank's standard construction loan disbursement conditions and requirements, or (iii) Mortgagor. Nothing herein shall be deemed to excuse Mortgagor from restoring, repairing and maintaining the Property as required herein.

**Impositions; Escrow Deposit.** Mortgagor will pay all taxes, levies, assessments and other fees and charges imposed upon or which may become a lien upon the Property under any law or ordinance (all of the foregoing collectively "Impositions") before they become delinquent and in any event in the same calendar year in which they first become due. Upon request of Bank, Mortgagor shall add to each periodic payment required under the Note the amount estimated by Bank to be sufficient to enable Bank to pay, as they come due, all Impositions and insurance premiums which Mortgagor is required to pay hereunder. Payments requested under this provision shall be supplemented or adjusted as required by Bank from time to time. Such funds may be commingled with the general funds of Bank and shall not earn interest. Upon the occurrence of a Default, Bank may apply such funds to pay any of the Obligations.

RLEST   314   300

**Use of Property.**  Mortgagor shall use and operate, and require its lessees or licensees to use and operate, the Property in compliance with all applicable laws (including, for example, the Americans with Disabilities Act and the Fair Housing Act) and ordinances, covenants, and restrictions, and with all applicable requirements of any lease or sublease now or hereafter affecting the Property.  Mortgagor shall not permit any unlawful use of the Property or any use that may give rise to a claim of forfeiture of any of the Property   Mortgagor shall not allow changes in the stated use of Property from that disclosed to Bank at the time of execution hereof   Mortgagor shall not initiate or acquiesce to a zoning change of the Property without prior notice to, and written consent of, Bank.

**Maintenance, Repairs and Alterations.**  Mortgagor shall keep and maintain the Property in good condition and repair and fully protected from the elements to the satisfaction of Bank.  Mortgagor will not remove, demolish or structurally alter any of the buildings or other improvements on the Property (except such alterations as may be required by laws, ordinances or regulations) without the prior written consent of Bank   Mortgagor shall promptly notify Bank in writing of any material loss, damage or adverse condition affecting the Property

**Eminent Domain.**  Should the Property or any interest therein be taken or damaged by reason of any public use or improvement or condemnation proceeding ("Condemnation"), or should Mortgagor receive any notice or other information regarding such Condemnation, Mortgagor shall give prompt written notice thereof to Bank.  Bank shall be entitled to all compensation, awards and other payments or relief granted in connection with such Condemnation and, at its option, may commence, appear in and prosecute in its own name any action or proceedings relating thereto.  Bank shall be entitled to make any compromise or settlement in connection with such taking or damage.  All compensation, awards, and damages awarded to Mortgagor related to any Condemnation (the "Proceeds") are hereby assigned to Bank and Mortgagor agrees to execute such further assignments of the Proceeds as Bank may require. Bank shall have the option of applying or paying the Proceeds in the same manner as insurance proceeds as provided herein.  Mortgagor appoints Bank as its attorney-in-fact to receive and endorse the Proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied.

**Environmental Condition of Property and Indemnity.**  Mortgagor warrants and represents to Bank, except as reported by Mortgagor to Bank in writing, that:  (i) Mortgagor has inspected and is familiar with the environmental condition of the Property, (ii) the Property and Mortgagor, and any occupants of the Property, are in compliance with and shall continue to be in compliance with all applicable federal, state and local laws and regulations intended to protect the environment and public health and safety as the same may be amended from time to time ("Environmental Laws"); (iii) the Property is not and has never been used to generate, handle, treat, store or dispose of, in any quantity, oil, petroleum products, hazardous or toxic substances, hazardous waste, regulated substances or hazardous air pollutants ("Hazardous Materials") in violation of any Environmental Laws; (iv) no Hazardous Materials (including asbestos, mold or lead paint in any form) are located on or under the Property or emanate from the Property; (v) there are no unregistered underground storage tanks on the Property that are subject to any underground storage tank registration laws or regulations; (vi) no notice has been received with regard to any Hazardous Material on the Property; (vii) no action, investigation or proceeding is pending or to Mortgagor's knowledge threatened which seeks to enforce any right or remedy against Mortgagor or the Property under any Environmental Law; and (viii) all licenses, permits and other governmental or regulatory actions necessary for the Property to comply with Environmental Laws shall be obtained and maintained and Mortgagor shall assure compliance therewith.

Further, Mortgagor represents to Bank that no portion of the Property is a protected wetland. Mortgagor agrees to notify Bank immediately upon receipt of any citations, warnings, orders, notices, consent agreements, process or claims alleging or relating to violations of any Environmental Laws or to the environmental condition of the Property and shall conduct and complete all investigations and all cleanup actions necessary to comply with the Environmental Laws and to remove, in accordance with Environmental Laws, any Hazardous Material from the Property.

Mortgagor shall indemnify, hold harmless, and defend Bank from and against any and all damages, penalties, fines, claims, suits, liabilities, costs, judgments and expenses, including attorneys', consultants' or experts' fees of every kind and nature incurred, suffered by or asserted against Bank as a direct or indirect result of. (i) representations made by Mortgagor in this Section being or becoming untrue in any material respect; (ii) Mortgagor's violation of or failure to meet the requirements of any Environmental Laws; or (iii) Hazardous Materials which, while the Property is subject to this Mortgage, exist on the Property. Bank shall have the right to arrange for or conduct environmental inspections of the Property from time to time (including the taking of soil, water, air or material samples). The cost of such inspections made after Default (as hereinafter defined) or which are required by laws or regulations applicable to Bank shall be borne by Mortgagor. However, Mortgagor's indemnity shall not apply to any negligent or intentional act of Bank which takes place after foreclosure or satisfaction of this Mortgage. These indemnification obligations are in addition to General Indemnification provisions set forth hereafter. Mortgagor's Obligations under this section shall continue, survive and remain in full force and effect notwithstanding the repayment of the Obligations, a foreclosure of or exercise of power of sale under this instrument, a delivery of a deed in lieu of foreclosure, a cancellation or termination of record of this instrument and the transfer of the Property.

**Appraisals.** Mortgagor agrees that Bank may obtain an appraisal of the Property when required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency, or any other regulatory agency or at such other times as Bank may reasonably require. Such appraisals shall be performed by an independent third party appraiser selected by Bank. The cost of such appraisals shall be borne by Mortgagor. If requested by Bank, Mortgagor shall execute an engagement letter addressed to the appraiser selected by Bank. Mortgagor's failure or refusal to sign such an engagement letter, however, shall not impair Bank's right to obtain such an appraisal. Mortgagor agrees to pay the cost of such appraisal within 10 days after receiving an invoice for such appraisal.

**Inspections.** Bank, or its representatives or agents, are authorized to enter at any reasonable time upon any part of the Property for the purpose of inspecting the Property and for the purpose of performing any of the acts it is authorized to perform under the terms of this Mortgage.

**Liens and Subrogation.** Mortgagor shall pay and promptly discharge all liens, claims and encumbrances upon the Property. Mortgagor shall have the right to contest in good faith the validity of any such lien, claim or encumbrance, provided· (i) such contest suspends the collection thereof or there is no danger of the Property being sold or forfeited while such contest is pending; (ii) Mortgagor first deposits with Bank a bond or other security satisfactory to Bank in such amounts as Bank shall reasonably require; and (iii) Mortgagor thereafter diligently proceeds to cause such lien, claim or encumbrance to be removed and discharged.

Bank shall be subrogated to any liens, claims and encumbrances against Mortgagor or the Property that are paid or discharged through payment by Bank or with loan proceeds, notwithstanding the record cancellation or satisfaction thereof.

**Waiver of Mortgagor's Rights.** To the fullest extent permitted by law, Mortgagor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Property, (ii) in any way extending the time for the enforcement of the collection of the Note or the debt evidenced thereby or any of the other Obligations, and any rights to hearing prior to the exercise by Bank of any right, power, or remedy herein provided to Bank.

To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or seek to take the benefit or advantage of any law now or hereafter in force providing for any exemption (including homestead exemption), appraisement, valuation, stay, extension or redemption, and Mortgagor for themselves and their respective heirs, devisees, representatives, successors and assigns, and for any and all persons claiming any interest in the Property, to the extent permitted by law, hereby waive and release all rights of valuation, appraisement, redemption, stay of execution, the benefit of all exemption laws, notice of election to mature or declare due the whole of the secured indebtedness and marshalling in the event of foreclosure of the liens hereby created. Mortgagor

RLEST 314 302

further waives any and all notices including, without limitation, notice of intention to accelerate and of acceleration of the Obligations.

**Payments by Bank.** In the event of Default (as hereinafter defined) in the timely payment or performance of any of the Obligations, Bank, at its option and without any duty on its part to determine the validity or necessity thereof, may pay the sums for which Mortgagor is obligated. Further, Bank may pay such sums as Bank deems appropriate for the protection and maintenance of the Property including, without limitation, sums to pay Impositions and other levies, assessments or liens, maintain insurance, make repairs, secure the Property, maintain utility service, intervene in any condemnation and pay attorneys' fees and other fees and costs to enforce this Mortgage or protect the lien hereof (including foreclosure) or collect the Obligations, without limitation, including those incurred in any proceeding including bankruptcy or arbitration. Any amounts so paid shall bear interest at the default rate stated in the Note and shall be secured by this Mortgage.

**Indemnification.** Mortgagor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i) the Loan Documents or any failure or alleged failure of Mortgagor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Documents; (ii) the Collateral or any claim of loss or damage to the Property or any injury or claim of injury to, or death of, any person or property that may be occasioned by any cause whatsoever pertaining to the Property or the use, occupancy or operation thereof, (iii) any failure or alleged failure of Mortgagor to comply with any law, rule or regulation applicable to it or to the Property or the use, occupancy or operation of the Property (including, without limitation, the failure to pay any taxes, fees or other charges), (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Bank relating in any way to or any matter contemplated by the Loan Documents, (v) any claim for brokerage fees or such other commissions relating to the Property or any other Obligations, or (vi) any and all liability arising from any leases related to the Property. Nothing contained herein shall require Mortgagor to indemnify Bank for any Damages resulting from Bank's gross negligence or its willful and wrongful acts, and such indemnity shall be effective only to the extent of any Damages that may be sustained by Bank in excess of any net proceeds received by it from any insurance of Mortgagor (other than self-insurance) with respect to such Damages. The indemnity provided for herein shall survive payment of the Obligations and shall extend to the officers, directors, employees and duly authorized agents of Bank. In the event the Bank incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Obligations from the date incurred until paid and shall be payable on demand.

**Assignment of Rents.** Mortgagor hereby absolutely assigns and transfers to Bank all the leases, rents, issues and profits of the Property (collectively "Rents"). Although this assignment is effective immediately, so long as no Default exists, Bank gives to and confers upon Mortgagor the privilege under a revocable license to collect as they become due, but not prior to accrual, the Rents and to demand, receive and enforce payment, give receipts, releases and satisfactions, and sue in the name of Mortgagor for all such Rents. Mortgagor represents there has been no prior assignment of leases or Rents, and agrees not to further assign such leases or Rents. Upon any occurrence of Default, the license granted to Mortgagor herein shall be automatically revoked without further notice to or demand upon Mortgagor, and Bank shall have the right, in its discretion, without notice, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the Obligations, (i) to enter upon and take possession of the Property, (ii) notify tenants, subtenants and any property manager to pay Rents to Bank or its designee, and upon receipt of such notice such persons are authorized and directed to make payment as specified in the notice and disregard any contrary direction or instruction by Mortgagor, and (iii) in its own name, sue for or otherwise collect Rents, including those past due, and apply Rents, less costs and expenses of operation and collection, including attorneys' fees, to the Obligations in such order and manner as Bank may determine or as otherwise provided for herein.



RLEST 314 303

Bank's exercise of any one or more of the foregoing rights shall not cure or waive any Default or notice of Default hereunder.

**Due on Sale or Further Encumbrance or Transfer of an Interest in Mortgagor.** Without the prior written consent of Bank in each instance, Mortgagor shall not (i) sell, convey, transfer or encumber the Property, or any part thereof or interest therein, whether legal or equitable, (ii) cause or permit any transfer of the Property or any part thereof, whether voluntarily, involuntarily or by operation of law, or (iii) enter into any agreement or transaction to transfer, or accomplish in form or substance a transfer, of the Property. A "transfer" of the Property includes: (a) the direct or indirect sale, transfer or conveyance of the Property or any portion thereof or interest therein; (b) the execution of an installment sale contract or similar instrument affecting all or any portion of the Property; (c) if Mortgagor or any general partner or member of Mortgagor, is a corporation, partnership, limited liability company, trust or other business entity, the transfer, pledge, assignment or encumbrance (whether in one transaction or a series of transactions) of any stock, partnership, limited liability company or other ownership interests in such corporation, partnership, limited liability company or entity including, without limitation, changes in stockholders, partners, members, managers, trustees, beneficiaries, or their respective interests; whether directly or indirectly, (d) if Mortgagor, or any general partner or member of Mortgagor, is a corporation, the creation or issuance of new stock by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders, and (e) an agreement by Mortgagor leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of or the grant of a security interest in and to any Leases.

Bank's consent to any conveyance or encumbrance may be conditioned upon an increase in the interest rate specified in the Note (or other Obligations), an extension or curtailment of the maturity of the Obligations, or other modification of the Note or this instrument.

**Remedies of Bank on Default.** Failure of Mortgagor or any other person liable to timely pay or perform any of the Obligations is a default ("Default") under this Mortgage. Upon the occurrence of Default the following remedies are available, without limitation, to Bank: (i) Bank may exercise any or all of Bank's remedies under this Mortgage or other Loan Documents including, without limitation, acceleration of the maturity of all payments and Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) with Bank or any of its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), (ii) Bank may take immediate possession of the Property or any part thereof (which Mortgagor agrees to surrender to Bank) and manage, control or lease the same to such persons and at such rental as it may deem proper and collect and apply Rents to the payment of: (a) the Obligations, together with all costs and attorneys' fees, (b) all Impositions and any other levies, assessments or liens which may be prior in lien or payment to the Obligations, and premiums for insurance, with interest on all such items, and (c) the cost of all alterations, repairs, replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof, all in such order or priority as Bank in its sole discretion may determine. The taking of possession shall not prevent concurrent or later proceedings for the foreclosure sale of the Property, (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided. In the event of such application, Mortgagor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Mortgagor, without regard to whether Mortgagor has committed waste or permitted deterioration of the Property, without regard to the adequacy of any security for the Obligations, and without regard to the solvency of Mortgagor or any other person, firm or corporation who or which may be liable for the payment of the Obligations, (iv) Bank may sell all or part of the Property (referred to as "Sale") pursuant to power of sale (which is hereby granted) by public sale conducted at the courthouse door in the county in which any part of the Property is located after publishing once a week for three successive weeks in some newspaper published in such county notice of such sale providing the time of such Sale, and republish and conduct in the same manner additional Sales as may be required until all of the Property is sold or the Obligations are satisfied], (v) With respect to any portion of the Property governed by the UCC, Bank shall have all of



the rights and remedies of a secured party thereunder. Bank may elect to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property; (vi) Bank may bid at Sale and may accept, as successful bidder, credit of the bid amount against the Obligations as payment of any portion of the purchase price; and (vii) Bank shall apply the proceeds of Sale, first to any fees or attorney fees permitted Bank by law in connection with Sale, second to expenses of foreclosure, publication, and sale permitted Bank by law in connection with Sale, third to the Obligations, and any remaining proceeds as required by law

**Miscellaneous Provisions.** Mortgagor agrees to the following: (i) All remedies available to Bank with respect to this Mortgage or available at law or in equity shall be cumulative and may be pursued concurrently or successively. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default. Any payment by Bank or acceptance by Bank of any partial payment shall not constitute a waiver by Bank of any Default; (ii) Mortgagor represents that Mortgagor (a) is (1) an adult individual and is sui juris, or (2) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Mortgage and any other Loan Document to which it is a party. (iii) The provisions hereof shall be binding upon and inure to the benefit of Mortgagor, its heirs, personal representatives, successors and assigns including, without limitation, subsequent owners of the Property or any part thereof, and shall be binding upon and inure to the benefit of Bank, its successors and assigns and any future holder of the Note or other Obligations; (iv) Any notices, demands or requests shall be sufficiently given Mortgagor if in writing and mailed or delivered to the address of Mortgagor shown above or to another address as provided herein and to Bank if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011, or such other address as Bank may specify from time to time and in the event that Mortgagor changes Mortgagor's address at any time prior to the date the Obligations are paid in full, that party shall promptly give written notice of such change of address by registered or certified mail, return receipt requested, all charges prepaid. Notices to Bank must include the mail code (v) All payments shall be mailed to Commercial Loan Services, P. O. Box 740502, Atlanta, GA 30374-0502; or such other address as provided by Bank in writing. (vi) This Mortgage may not be changed, terminated or modified orally or in any manner other than by an instrument in writing signed by the parties hereto; (vii) All references to "Bank" shall mean to "Bank (for itself and its affiliate)"; (viii) The captions or headings at the beginning of each paragraph hereof are for the convenience of the parties and are not a part of this Mortgage; (ix) If the lien of this Mortgage is invalid or unenforceable as to any part of the Obligations, the unsecured portion of the Obligations shall be completely paid (and all payments made shall be deemed to have first been applied to payment of the unsecured portion of the Obligations) prior to payment of the secured portion of the Obligations and if any clause, provision or obligation hereunder is determined invalid or unenforceable the remainder of this Mortgage shall be construed and enforced as if such clause, provision or obligation had not been contained herein; (x) This Mortgage shall be governed by and construed under the laws of the jurisdiction where this Mortgage is recorded; (xi) Mortgagor by execution and Bank by acceptance of this Mortgage agree to be bound by the terms and provisions hereof. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR

CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties. There are no unwritten agreements between the parties.

**Minimum Standards.** In addition to the requirements set forth in the Loan Documents, all surveys, insurance, title policies, construction documents, environmental reports, payment and performance bonds, and any other due diligence or additional documents required in connection with this Loan, shall comply with Bank's minimum standards in place from time to time for such documents, which shall be provided in writing by Bank to Borrower upon request.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, MORTGAGOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS DEED, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS DEED, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS DEED.

MORTGAGOR AND BANK AGREE THAT THEY SHALL NOT HAVE A REMEDY OF PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE OTHER IN ANY DISPUTE AND HEREBY WAIVE ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY HAVE NOW OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY DISPUTE WHETHER THE DISPUTE IS RESOLVED BY ARBITRATION OR JUDICIALLY.

 

**IN WITNESS WHEREOF**, Mortgagor has duly signed and sealed this instrument as of the day and year first above written

Mortgagor

D & B Farm Center, L.L.C

By: _____ (SEAL)
Jerrell Branch, Member

By: _____ (SEAL)
Gregory Scott Denney, Member

State of Alabama
County of Clay

### L. L. C. Acknowledgment

I certify that before me appeared this day Jerrell Branch, a person known to me, who after being sworn stated he/she is Member of D & B Farm Center, L.L.C., a Alabama limited liability company and is duly authorized to act on behalf of said Company, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Company voluntarily and with full authority.

Witness my hand and official seal, this 29 day of May , 2007

_____ , Notary Public

Notary Seal        Tonya Nolen
                   (Printed Name of Notary)

My Commission Expires: 7|24|09

State of Alabama
County of Clay

### L. L. C. Acknowledgment

I certify that before me appeared this day Gregory Scott Denney, a person known to me, who after being sworn stated he/she is Member of D & B Farm Center, L.L.C., a Alabama limited liability company and is duly authorized to act on behalf of said Company, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Company voluntarily and with full authority.

Witness my hand and official seal, this 29 day of May , 2007

_____ , Notary Public

Notary Seal        Tonya Nolen
                   (Printed Name of Notary)

My Commission Expires: 7|24|09

CAT - Deal # 1576169528  Facility ID 1576169734



EXHIBIT "A"

RLEST    314    307

This Exhibit "A" is attached to a certain Mortgage by and between D & B Farm
Center, L.L.C. and Wachovia Bank, National Association, securing that certain
Promissory Note of even date herewith executed by D & B Farm Center, LLC an d
Gregory Scott Denney  in the amount of $50,000.00 dated May 29, 2007.

LEGAL DESCRIPTION FOR ATTACHMENT TO MORTGAGE

**RLEST   314   308**

TO: WACHOVIA BANK

RE: D & B FARM CENTER, LLC

Commencing at a lightard knot in a ring of stones painted white and accepted as the NE corner of SE 1/4 of SE 1/4 of Section 1, Township 22 South, Range 7 East, Huntsville Meridian, Clay County, Alabama; thence South 77 degrees 23 minutes 24 seconds West a distance of 1513.17 feet to a point on the East ROW line of a paved public road known as County Road #5 as witnessed by an iron pin offset North 87 degrees 56 minutes 49 seconds West a distance of 2.17 feet, the NW corner of the parcel being described and the Point of Beginning; thence along a curve to the left having a degree of 05 degrees 44 minutes 17 seconds thence Southerly along said curve 253.70 feet along said curve having a chord direction of South 10 degrees 19 minutes 26 seconds East and a chord length of 253.02 feet, following the East ROW line of said paved road and the West line of the parcel being described to a point on said ROW line and the SW corner of the parcel being described as witnessed by an iron pin offset North 72 degrees 04 minutes 35 seconds East a distance of 4.57 feet; thence North 72 degrees 04 minutes 35 seconds East a distance of 185.50 feet along the South line of the parcel to an iron pin set as the SE corner of the parcel being described; thence North 02 degrees 56 minutes 17 seconds West a distance of 184.46 feet along the East line of the parcel to an iron pin set as the NE corner of the parcel being described; thence North 87 degrees 56 minutes 49 seconds West a distance of 212.52 feet along the North line of the parcel to the Point of Beginning; said parcel lying in the SW 1/4 of SE 1/4 and the SE 1/4 of SW 1/4 of Section 1 as referenced above. According to the survey map and plat dated April 16, 2004, prepared by John L. Ratley, Jr., Ala. Reg. No. 12157.

The undersigned do hereby incorporate the above description into the mortgage executed by them on ___May 29___, 2007, as if said description were set out on the face thereof.

_____5/29/7_____
Date

_Jerrell Branch, Member_
JERRELL BRANCH, Member

_Gregory Scott Denny, Member_
GREGORY SCOTT DENNEY, Member

EXHIBIT "A"

EXHIBIT C

# UNCONDITIONAL GUARANTY

May 29, 2007

D & B Farm Center, L L.C.
12075 County Road 5
Ashland, Alabama 36251

Gregory Scott Denney
12134 County Road 5
Ashland, Alabama 36251
(Individually and collectively, "Borrower")

Jerrell Branch
11920 County Road 5
Ashland, Alabama 36251
(Hereinafter referred to as "Guarantor")

Wachovia Bank, National Association
Birmingham, Alabama 35203
(Hereinafter referred to as "Bank")

To induce Bank to make, extend or renew loans, advances, credit, or other financial accommodations to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, and in consideration of loans, advances, credit, or other financial accommodations made, extended or renewed to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of Borrower to Bank and its affiliates, including, but not limited to, all obligations under any notes, loan agreements, security agreements, letters of credit, instruments, accounts receivable, contracts, drafts, leases, chattel paper, indemnities, acceptances, repurchase agreements, overdrafts, and the Loan Documents, as defined below, and all obligations of Borrower to Bank or any of its affiliates under any swap agreement (as defined in 11 U.S.C. § 101, as in effect from time to time), however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, due or to become due, now existing or hereafter contracted or acquired, and all modifications, extensions and renewals thereof, (collectively, the "Guaranteed Obligations")

Guarantor further covenants and agrees·

**GUARANTOR'S LIABILITY.**  This Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection.  The parties to this Guaranty are jointly and severally obligated together with all other parties obligated for the Guaranteed Obligations  This Guaranty does not impose any obligation on Bank to extend or continue to extend credit or otherwise deal with Borrower at any subsequent time.  This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Guaranteed Obligations is rescinded, avoided or for any other reason must be returned by Bank, and the returned payment shall remain payable as part of the Guaranteed Obligations, all as though such payment had not been made.  Except to the extent the provisions of this Guaranty give Bank additional rights, this Guaranty shall not be deemed to supersede or replace any other guaranties given to Bank by Guarantor, and the obligations guaranteed hereby shall be in addition to any other obligations guaranteed by Guarantor pursuant to any other agreement of guaranty given to Bank and other guaranties of the Guaranteed Obligations

535104 (Rev 22 0)

GUAR

WPSI1576169736001        CDGUARXXXX        guar doc

**TERMINATION OF GUARANTY.** Guarantor may terminate this Guaranty only by written notice, delivered personally to or received by certified or registered United States Mail by an authorized officer of Bank at the address for notices provided herein. Such termination shall be effective only with respect to Guaranteed Obligations arising more than 15 days after the date such written notice is received by said Bank officer. Such termination shall not be effective with respect to Guaranteed Obligations (including any subsequent extensions, modifications or compromises of the Guaranteed Obligations) then existing, or Guaranteed Obligations arising subsequent to receipt by Bank of said notice if such Guaranteed Obligations are a result of Bank's obligation to make advances pursuant to a commitment, or are based on Borrower's obligations to make payments pursuant to any swap agreement (as defined in 11 U.S.C. § 101, as in effect from time to time), entered into prior to expiration of the 15 day notice period, or are a result of advances which are necessary for Bank to protect its collateral or otherwise preserve its interests. Termination of this Guaranty by any single Guarantor will not affect the existing and continuing obligations of any other Guarantor hereunder.

**CONSENT TO MODIFICATIONS.** Guarantor **consents and agrees that Bank (and, with respect to swap obligations, its affiliates) may from time to time, in its sole discretion, without affecting, impairing, lessening or releasing the obligations of Guarantor hereunder:** (a) extend or modify the time, manner, place or terms of payment or performance and/or otherwise change or modify the credit terms of the Guaranteed Obligations; (b) increase, renew, or enter into a novation of the Guaranteed Obligations; (c) waive or consent to the departure from terms of the Guaranteed Obligations; (d) permit any change in the business or other dealings and relations of Borrower or any other guarantor with Bank; (e) proceed against, exchange, release, realize upon, or otherwise deal with in any manner any collateral that is or may be held by Bank in connection with the Guaranteed Obligations or any liabilities or obligations of Guarantor; and (f) proceed against, settle, release, or compromise with Borrower, any insurance carrier, or any other person or entity liable as to any part of the Guaranteed Obligations, and/or subordinate the payment of any part of the Guaranteed Obligations to the payment of any other obligations, which may at any time be due or owing to Bank; all in such manner and upon such terms as Bank may deem appropriate, and without notice to or further consent from Guarantor. No invalidity, irregularity, discharge or unenforceability of, or action or omission by Bank relating to any part of the Guaranteed Obligations or any security therefor shall affect or impair this Guaranty.

**WAIVERS AND ACKNOWLEDGMENTS. Guarantor waives and releases the following rights, demands, and defenses** Guarantor may have with respect to Bank (and, with respect to swap obligations, its affiliates) and collection of the Guaranteed Obligations: (a) promptness and diligence in collection of any of the Guaranteed Obligations from Borrower or any other person liable thereon, and in foreclosure of any security interest and sale of any property serving as collateral for the Guaranteed Obligations; (b) any law or statute that requires that Bank (and, with respect to swap obligations, its affiliates) make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Guarantor with respect to the Guaranteed Obligations, including any such rights Guarantor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, O.C.G.A. § 10-7-24, Mississippi Code Ann. Section 87-5-1, California Civil Code Section §§ 2787 to 2855 inclusive, and any successor statute and any other applicable law; (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of any action against Guarantor; (d) that Bank or its affiliates preserve, insure or perfect any security interest in collateral or sell or dispose of collateral in a particular manner or at a particular time, provided that Bank's obligation to dispose of Collateral in a commercially reasonable manner is not waived hereby; (e) notice of extensions, modifications, renewals, or novations of the Guaranteed Obligations, of any new transactions or other relationships between Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any other guarantor; (f) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale, and all other notices of any kind whatsoever to which Guarantor may be entitled; (g) the right to assert against Bank or its affiliates any

defense (legal or equitable), set-off, counterclaim, or claim that Guarantor may have at any time against Borrower or any other party liable to Bank or its affiliates, (h) all defenses relating to invalidity, insufficiency, unenforceability, enforcement, release or impairment of Bank or its affiliates' lien on any collateral, of the Loan Documents, or of any other guaranties held by Bank, (i) any right to which Guarantor is or may become entitled to be subrogated to Bank or its affiliates' rights against Borrower or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank or its affiliates against Borrower or any security which Bank or its affiliates now has or hereafter acquires, until such time as the Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period; (j) any claim or defense that acceleration of maturity of the Guaranteed Obligations is stayed against Guarantor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity, and (k) the right to marshalling of Borrower's assets or the benefit of any exemption claimed by Guarantor. Guarantor acknowledges and represents that Guarantor has relied upon Guarantor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral; Guarantor will continue to be responsible for making an independent appraisal of such matters; and Guarantor has not relied upon Bank or its affiliates for information regarding Borrower or any collateral.

**FINANCIAL CONDITION.** Guarantor warrants, represents and covenants to Bank and its affiliates that on and after the date hereof: (a) the fair saleable value of Guarantor's assets exceeds its liabilities, Guarantor is meeting its current liabilities as they mature, and Guarantor is and shall remain solvent; (b) all financial statements of Guarantor furnished to Bank are correct and accurately reflect the financial condition of Guarantor as of the respective dates thereof; (c) since the date of such financial statements, there has not occurred a material adverse change in the financial condition of Guarantor, (d) there are not now pending any court or administrative proceedings or undischarged judgments against Guarantor, no federal or state tax liens have been filed or threatened against Guarantor, and Guarantor is not in default or claimed default under any agreement; and (e) at such reasonable times as Bank requests, Guarantor will furnish Bank and its affiliates with such other financial information as Bank and its affiliates may reasonably request.

**INTEREST AND APPLICATION OF PAYMENTS.** Regardless of any other provision of this Guaranty or other Loan Documents, if for any reason the effective interest on any of the Guaranteed Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Guaranteed Obligations. Monies received from any source by Bank or its affiliates for application toward payment of the Guaranteed Obligations may be applied to such Guaranteed Obligations in any manner or order deemed appropriate by Bank and its affiliates.

**DEFAULT.** If any of the following events occur, a default ("Default") under this Guaranty shall exist: (a) failure of timely payment or performance of the Guaranteed Obligations or a default under any Loan Document; (b) a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Bank or its affiliates, whether now existing or hereafter arising; (c) the death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or the commencement of any insolvency or bankruptcy proceeding by or against Guarantor or any general partner of or the holder(s) of the majority ownership interests of Guarantor; and/or (d) Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Borrower or Guarantor, financial or otherwise.

If a Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice, other than Guaranteed Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) with Bank or its affiliates, which shall be due in accordance with and governed by

the provisions of said swap agreements, and, Bank and its affiliates may exercise any rights and remedies as provided in this Guaranty and other Loan Documents, or as provided at law or equity Guarantor shall pay interest on the Guaranteed Obligations from such Default at the highest rate of interest charged on any of the Guaranteed Obligations.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Guarantor shall pay all of Bank's and its affiliates' reasonable expenses incurred to enforce or collect any of the Guaranteed Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any suit, arbitration, or administrative proceeding, or in any appellate, or bankruptcy proceeding.

**SUBORDINATION OF OTHER DEBTS.** Guarantor agrees: (a) to subordinate the obligations now or hereafter owed by Borrower to Guarantor ("Subordinated Debt") to any and all obligations of Borrower to Bank or its affiliates now or hereafter existing while this Guaranty is in effect, provided however that Guarantor may receive regularly scheduled principal and interest payments on the Subordinated Debt so long as (i) all sums due and payable by Borrower to Bank and its affiliates have been paid in full on or prior to such date, and (ii) no event or condition which constitutes or which with notice or the lapse or time would constitute an event of default with respect to the Guaranteed Obligations shall be continuing on or as of the payment date; (b) Guarantor will either place a legend indicating such subordination on every note, ledger page or other document evidencing any part of the Subordinated Debt or deliver such documents to Bank; and (c) except as permitted by this paragraph, Guarantor will not request or accept payment of or any security for any part of the Subordinated Debt, and any proceeds of the Subordinated Debt paid to Guarantor, through error or otherwise, shall immediately be forwarded to Bank by Guarantor, properly endorsed to the order of Bank, to apply to the Guaranteed Obligations.

**MISCELLANEOUS. Assignment.** This Guaranty and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Guaranty and other Loan Documents are freely assignable, in whole or in part, by Bank. Any assignment shall not release Guarantor from the Guaranteed Obligations. **Organization; Powers.** Guarantor (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity (as indicated below), duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization, (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Guaranty and any other Loan Document to which it is a party. **Applicable Law; Conflict Between Documents.** This Guaranty shall be governed by and construed under the laws of the state named in Bank's address shown above without regard to that state's conflict of laws principles. If the terms of this Guaranty should conflict with the terms of any commitment letter that survives closing, the terms of this Guaranty shall control. **Guarantor's Accounts.** Except as prohibited by law, Guarantor grants Bank and its affiliates a security interest in all of Guarantor's deposit accounts and investment properties maintained with Bank and its affiliates. **Jurisdiction.** Guarantor irrevocably agrees to non-exclusive personal jurisdiction in the state named in Bank's address shown above. **Severability.** If any provision of this Guaranty or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty or other Loan Documents. **Payments.** All payments shall be mailed to Commercial Loan Services, P. O. Box 740502, Atlanta, GA 30374-0502. **Notices.** Any notices to Guarantor shall be sufficiently given if in writing and mailed or delivered to Guarantor's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P.O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time Notices to Bank must include the mail code. In the event that Guarantor changes Guarantor's address at any time prior to the

07152P30260S

date the Guaranteed Obligations are paid in full, Guarantor agrees to promptly give written notice of said change of address to Bank by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Guarantor by execution of and Bank by acceptance of this Guaranty agree that each party is bound to all terms and provisions of this Guaranty. **Amendments, Waivers and Remedies.** No waivers, amendments or modifications of this Guaranty and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank or its affiliates of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank or its affiliates in exercising any right, power, or privilege granted pursuant to this Guaranty and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. All remedies available to Bank or its affiliates with respect to this Guaranty and other Loan Documents and remedies available at law or in equity shall be cumulative and may be pursued concurrently or successively. **Partnerships.** If Guarantor is a partnership, the obligations, liabilities and agreements on the part of Guarantor shall remain in full force and effect and fully applicable notwithstanding any changes in the individuals comprising the partnership. The term "Guarantor" includes any altered or successive partnerships, and predecessor partnership(s) and the partners shall not be released from any obligations or liabilities hereunder. **Loan Documents.** The term "Loan Documents" refers to all documents executed in connection with or related to the Guaranteed Obligations and may include, without limitation, commitment letters that survive closing, loan agreements, other guaranty agreements, security agreements, instruments, financing statements, mortgages, deeds of trust, deeds to secure debt, letters of credit and any amendments or supplements (excluding swap agreements as defined in 11 U.S.C § 101, as in effect from time to time). **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties. There are no unwritten agreements between the parties.

**FINANCIAL AND OTHER INFORMATION.** Guarantor shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Guarantor's financial condition. Such information shall be true, complete, and accurate.

**NEGATIVE COVENANTS.** Guarantor agrees that from the date hereof and until final payment in full of the Guaranteed Obligations, unless Bank shall otherwise consent in writing, Guarantor will not: **Default on Other Contracts or Obligations.** Default on any material contract with or obligation when due to a third party or default in the performance of any obligation to a third party incurred for money borrowed. **Government Intervention.** Permit the assertion or making of any seizure, vesting or intervention by or under authority of any governmental entity, as a result of which the management of Guarantor or any guarantor is displaced of its authority in the conduct of its respective business or such business is curtailed or materially impaired. **Judgment Entered.** Permit the entry of any monetary judgment or the assessment against, the filing of any tax lien against, or the issuance of any writ of garnishment or

attachment against any property of or debts due. **Retire or Repurchase Capital Stock.** Retire or otherwise acquire any of its capital stock.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF GUARANTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS GUARANTY. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS GUARANTY.

**IN WITNESS WHEREOF**, Guarantor, on the day and year first written above, has caused this Unconditional Guaranty to be duly executed under seal.

_____(SEAL)
Jerrell Branch

CAT - Deal # 1576169528  Facility ID 1576169736

EXHIBIT D

# SECURITY AGREEMENT

May 29, 2007

D & B Farm Center, L.L C
12075 County Road 5
Ashland, Alabama 36251
(Individually and collectively, "Debtor")

Wachovia Bank, National Association
Birmingham, Alabama 35203
(Hereinafter referred to as "Bank")

For value received and to secure payment and performance of any and all obligations of Gregory Scott Denney and D & B Farm Center, L.L C. (collectively, "Borrower") to Bank however created, arising or evidenced, whether direct or indirect, absolute or contingent, now existing or hereafter arising or acquired, including swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), future advances, and all costs and expenses incurred by Bank to obtain, preserve, perfect and enforce the security interest granted herein and to maintain, preserve and collect the property subject to the security interest (collectively, "Secured Obligations"), Debtor hereby grants to Bank a continuing security interest in and lien upon the following described property, whether now owned or hereafter acquired, and any additions, replacements, accessions, or substitutions thereof and all cash and non-cash proceeds and products thereof (collectively, "Collateral"):

All of the personal property of Debtor of every kind and nature including, without limitation, all accounts, equipment, accessions, inventory, chattel paper, instruments, investment property, documents, letter-of-credit rights, deposit accounts, and general intangibles, wherever located.

Debtor hereby represents and agrees that:

**OWNERSHIP.** Debtor owns the Collateral or Debtor will purchase and acquire rights in the Collateral within ten days of the date advances are made under the Loan Documents. If Collateral is being acquired with the proceeds of an advance under the Loan Documents, Debtor authorizes Bank to disburse proceeds directly to the seller of the Collateral   The Collateral is free and clear of all liens, security interests, and claims except those previously reported in writing to and approved by Bank, and Debtor will keep the Collateral free and clear from all liens, security interests and claims, other than those granted to or approved by Bank.

**NAME AND OFFICES; JURISDICTION OF ORGANIZATION.** The name and address of Debtor appearing at the beginning of this Agreement are Debtor's exact legal name and the address of its chief executive office   There has been no change in the name of Debtor, or the name under which Debtor conducts business, within the five years preceding the date hereof except as previously reported in writing to Bank. Debtor has not moved its chief executive office within the five years preceding the date hereof except as previously reported in writing to Bank. Debtor is organized under the laws of the State of Alabama and has not changed the jurisdiction of its organization within the five years preceding the date hereof except as previously reported in writing to Bank.

**TITLE/TAXES.** Debtor has good and marketable title to the Collateral and will warrant and defend same against all claims. Debtor will not transfer, sell, or lease Collateral (except as permitted herein). Debtor agrees to pay promptly all taxes and assessments upon or for the use of Collateral and on this Security Agreement   At its option, Bank may discharge taxes, liens, security interests or other encumbrances at any time levied or placed on Collateral. Debtor agrees to reimburse Bank, on demand, for any such payment made by Bank   Any amounts so paid shall be added to the Secured Obligations.

**WAIVERS AND ACKNOWLEDGMENTS.** Debtor agrees not to assert against Bank as a defense (legal or equitable), as a set-off, as a counterclaim, or otherwise, any claims Debtor may have against any seller or lessor that provided personal property or services relating to any part of the Collateral or against any Borrower or any other party liable to Bank for all or any part of the Secured Obligations. Debtor waives all exemptions and homestead rights with regard to the Collateral. Debtor waives any and all rights to any bond or security which might be required by applicable law prior to the exercise of any of Bank's remedies against any Collateral. All rights of Bank and security interests hereunder, and all obligations of Debtor hereunder, shall be absolute and unconditional, not discharged or impaired irrespective of (and regardless of whether Debtor receives any notice of): (i) any lack of validity or enforceability of any Loan Document; (ii) any change in the time, manner or place of payment or performance, or in any term, of all or any of the Secured Obligations or the Loan Documents or any other amendment or waiver of or any consent to any departure from any Loan Document; or (iii) any exchange, insufficiency, unenforceability, enforcement, release, impairment or non-perfection of any collateral, or any release of or modifications to or insufficiency, unenforceability or enforcement of the obligations of any guarantor or other obligor. To the extent permitted by law, Debtor hereby waives any rights under any valuation, stay, appraisement, extension or redemption laws now existing or which may hereafter exist and which, but for this provision, might be applicable to any sale or disposition of the Collateral by Bank, and any other circumstance which might otherwise constitute a defense available to, or a discharge of any party with respect to the Secured Obligations, including but not limited to the following:

Debtor **waives and releases the following rights, demands, and defenses** Debtor may have with respect to Bank and collection of the Secured Obligations: (a) promptness and diligence in collection of any of the Secured Obligations from the Borrower or any other person liable thereon, and in foreclosure of any other security interest and sale of any other property serving as collateral for the Secured Obligations; (b) any law or statute that requires that Bank make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Debtor with respect to the Secured Obligations, including any such rights Debtor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, as in effect from time to time, O.C.G.A. § 10-7-24, Mississippi Code Ann. Section 87-5-1 and any successor statute and any other applicable law, (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of any action against Debtor, (d) notice of extensions, modifications, renewals, or novations of the Secured Obligations, of any new transactions or other relationships between Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any guarantor; (e) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity or notice of acceleration of maturity; (f) any right to which Debtor is or may become entitled to be subrogated to Bank's rights against Debtor or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank against Borrower or any security which Bank now has or hereafter acquires, until such time as the Secured Obligations have been fully satisfied beyond the expiration of any applicable preference period, (g) any claim or defense that acceleration of maturity of the Secured Obligations is stayed against Debtor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (h) the right to marshalling of Debtor's assets or the benefit of any exemption claimed by Debtor. Debtor acknowledges and represents that Debtor has relied upon Debtor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral; Debtor will continue to be responsible for making its own independent appraisal of such matters, and Debtor has not relied upon Bank for information regarding Borrower or any collateral

**FINANCIAL CONDITION.** Debtor warrants, represents and covenants to Bank that on and after the date hereof: (a) the fair saleable value of Debtor's assets exceeds its liabilities, Debtor is meeting its current liabilities as they mature, and Debtor is and shall remain solvent, (b) all financial statements of Debtor furnished to Bank are correct and accurately reflect the financial condition of Debtor as of the respective dates thereof, (c) since the date of such financial statements, there has not occurred a material adverse change in the financial condition of Debtor; (d) there are not now pending any court or administrative

proceedings or undischarged judgments against Debtor, no federal or state tax liens have been filed or threatened against Debtor, and Debtor is not in default or claimed default under any agreement; and (e) at such reasonable times as Bank requests, Debtor will furnish Bank with such other financial information as Bank may reasonably request

**INTEREST AND APPLICATION OF PAYMENTS.** Regardless of any other provision of this Security Agreement or other Loan Documents, if for any reason the effective interest on any of the Secured Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Secured Obligations  Monies received from any source by Bank for application toward payment of the Secured Obligations may be applied to such Secured Obligations in any manner or order deemed appropriate by Bank.

**NOTIFICATIONS; LOCATION OF COLLATERAL.** Debtor will notify Bank in writing at least 30 days prior to any change in: (i) Debtor's chief place of business and/or residence; (ii) Debtor's name or identity; (iii) Debtor's corporate/organizational structure, or (iv) the jurisdiction in which Debtor is organized.  In addition, Debtor shall promptly notify Bank of any claims or alleged claims of any other person or entity to the Collateral or the institution of any litigation, arbitration, governmental investigation or administrative proceedings against or affecting the Collateral.  Debtor will keep Collateral at the location(s) previously provided to Bank until such time as Bank provides written advance consent to a change of location. Debtor will bear the cost of preparing and filing any documents necessary to protect Bank's liens.

**COLLATERAL CONDITION AND LAWFUL USE.** Debtor represents that the Collateral is in good repair and condition and that Debtor shall use reasonable care to prevent Collateral from being damaged or depreciating, normal wear and tear excepted  Debtor shall immediately notify Bank of any material loss or damage to Collateral.  Debtor shall not permit any item of Collateral to become a fixture to real estate or an accession to other personal property unless such property is also Collateral hereunder.  Debtor represents it is in compliance in all respects with all laws, rules and regulations applicable to the Collateral and its properties, operations, business, and finances.

**RISK OF LOSS AND INSURANCE.** Debtor shall bear all risk of loss with respect to the Collateral.  The injury to or loss of Collateral, either partial or total, shall not release Debtor from payment or other performance hereof  Debtor agrees to obtain and keep in force property insurance on the Collateral with a Lender's Loss Payable Endorsement in favor of Bank and commercial general liability insurance naming Bank as Additional Insured and such other insurance as Bank may require from time to time. Such insurance is to be in form and amounts satisfactory to Bank and issued by reputable insurance carriers satisfactory to Bank with a Best Insurance Report Key Rating of at least "A-".  All such policies shall provide to Bank a minimum of 30 days written notice of cancellation.  Debtor shall furnish to Bank such policies, or other evidence of such policies satisfactory to Bank  If Debtor fails to obtain or maintain in force such insurance or fails to furnish such evidence, Bank is authorized, but not obligated, to purchase any or all insurance or "Single Interest Insurance" protecting such interest as Bank deems appropriate against such risks and for such coverage and for such amounts, including either the loan amount or value of the Collateral, all at its discretion, and at Debtor's expense.  In such event, Debtor agrees to reimburse Bank for the cost of such insurance and Bank may add such cost to the Secured Obligations.  Debtor shall bear the risk of loss to the extent of any deficiency in the effective insurance coverage with respect to loss or damage to any of the Collateral.  Debtor hereby assigns to Bank the proceeds of all property insurance covering the Collateral up to the amount of the Secured Obligations and directs any insurer to make payments directly to Bank.  Debtor hereby appoints Bank its attorney-in-fact, which appointment shall be irrevocable and coupled with an interest for so long as Secured Obligations are unpaid, to file proof of loss and/or any other forms required to collect from any insurer any amount due from any damage or destruction of Collateral, to agree to and bind Debtor as to the amount of said recovery, to designate payee(s) of such recovery, to grant releases to insurer, to grant subrogation rights to any insurer, and to endorse any settlement check or draft.  Debtor agrees not to exercise any of the foregoing powers granted to Bank without Bank's prior written consent.

07152P302604

**FINANCING STATEMENTS, CERTIFICATES OF TITLE, POWER OF ATTORNEY.** No financing statement (other than any filed or approved by Bank) covering any Collateral is on file in any public filing office. Debtor authorizes the filing of one or more financing statements covering the Collateral in form satisfactory to Bank, and without Debtor's signature where authorized by law, agrees to deliver certificates of title on which Bank's lien has been indicated covering any Collateral subject to a certificate of title statute, and will pay all costs and expenses of filing or applying for the same or of filing this Security Agreement in all public filing offices, where filing is deemed by Bank to be desirable. Debtor hereby constitutes and appoints Bank the true and lawful attorney of Debtor with full power of substitution to take any and all appropriate action and to execute any and all documents, instruments or applications that may be necessary or desirable to accomplish the purpose and carry out the terms of this Security Agreement, including, without limitation, to complete, execute, and deliver any Control Agreement(s) by Bank, Debtor and Third Party(ies) that may be or become required in connection herewith (individually and collectively the "Control Agreement"), and any instructions to Third Party(ies) regarding, among other things, control and disposition of any Collateral which is the subject of such Control Agreement(s). The foregoing power of attorney is coupled with an interest and shall be irrevocable until all of the Secured Obligations have been paid in full. Neither Bank nor anyone acting on its behalf shall be liable for acts, omissions, errors in judgment, or mistakes in fact in such capacity as attorney-in-fact. Debtor ratifies all acts of Bank as attorney-in-fact. Debtor agrees to take such other actions, at Debtor's expense, as might be requested for the perfection, continuation and assignment, in whole or in part, of the security interests granted herein and to assure and preserve Bank's intended priority position. If certificates, passbooks, or other documentation or evidence is/are issued or outstanding as to any of the Collateral, Debtor will cause the security interests of Bank to be properly protected, including perfection by notation thereon or delivery thereof to Bank.

**LANDLORD/MORTGAGEE WAIVERS.** Debtor shall cause each mortgagee of real property owned by Debtor and each landlord of real property leased by Debtor to execute and deliver instruments satisfactory in form and substance to Bank by which such mortgagee or landlord subordinates its rights, if any, in the Collateral

**CONTROL.** Debtor will cooperate with Bank in obtaining control with respect to Collateral consisting of electronic chattel paper. Debtor authorizes and directs Third Party to comply with the terms of this Security Agreement, to enter into a Control Agreement, to mark its records to show the security interest of and/or the transfer to Bank of the property pledged hereunder.

**CHATTEL PAPER, ACCOUNTS, GENERAL INTANGIBLES.** Debtor warrants that Collateral consisting of chattel paper, accounts, or general intangibles is (i) genuine and enforceable in accordance with its terms; (ii) not subject to any defense, set-off, claim or counterclaim of a material nature against Debtor except as to which Debtor has notified Bank in writing, and (iii) not subject to any other circumstances that would impair the validity, enforceability, value, or amount of such Collateral except as to which Debtor has notified Bank in writing. Debtor shall not amend, modify or supplement any lease, contract or agreement contained in Collateral or waive any provision therein, without prior written consent of Bank. Debtor will not create any tangible chattel paper without placing a legend on the chattel paper acceptable to Bank indicating that Bank has a security interest in the chattel paper. Debtor will not create any electronic chattel paper without taking all steps deemed necessary by Bank to confer control of the electronic chattel paper upon Bank in accordance with the UCC.

**ACCOUNT INFORMATION.** From time to time, at Bank's request, Debtor shall provide Bank with schedules describing all accounts, including customers' addresses, created or acquired by Debtor and at Bank's request shall execute and deliver written assignments of contracts and other documents evidencing such accounts to Bank. Together with each schedule, Debtor shall, if requested by Bank, furnish Bank with copies of Debtor's sales journals, invoices, customer purchase orders or the equivalent, and original shipping or delivery receipts for all goods sold, and Debtor warrants the genuineness thereof.

**ACCOUNT DEBTORS.** If a Default should occur, Bank shall have the right to notify the account debtors obligated on any or all of the Collateral to make payment thereof directly to Bank and Bank may take control of all proceeds of any such Collateral, which rights Bank may exercise at any time. The cost of

such collection and enforcement, including attorneys' fees and expenses, shall be borne solely by Debtor whether the same is incurred by Bank or Debtor. If a Default should occur or upon demand of Bank, Debtor will, upon receipt of all checks, drafts, cash and other remittances in payment on Collateral, deposit the same in a special bank account maintained with Bank, over which Bank also has the power of withdrawal.

If a Default should occur, no discount, credit, or allowance shall be granted by Debtor to any account debtor and no return of merchandise shall be accepted by Debtor without Bank's consent. Bank may, after Default, settle or adjust disputes and claims directly with account debtors for amounts and upon terms that Bank considers advisable, and in such cases Bank will credit the Secured Obligations with the net amounts received by Bank, after deducting all of the expenses incurred by Bank. Debtor agrees to indemnify and defend Bank and hold it harmless with respect to any claim or proceeding arising out of any matter related to collection of Collateral

**GOVERNMENT CONTRACTS.** If any Collateral covered hereby arises from obligations due to Debtor from any governmental unit or organization, Debtor shall immediately notify Bank in writing and execute all documents and take all actions deemed necessary by Bank to ensure recognition by such governmental unit or organization of the rights of Bank in the Collateral.

**INVENTORY.** So long as no Default has occurred, Debtor shall have the right in the regular course of business, to process and sell Debtor's inventory. If a Default should occur or upon demand of Bank, Debtor will, upon receipt of all checks, drafts, cash and other remittances, in payment of Collateral sold, deposit the same in a special bank account maintained with Bank over which Bank also has the power of withdrawal. Debtor agrees to notify Bank immediately in the event that any inventory purchased by or delivered to Debtor is evidenced by a bill of lading, dock warrant, dock receipt, warehouse receipt or other document of title and to deliver such document to Bank upon request.

**INSTRUMENTS, CHATTEL PAPER, DOCUMENTS.** Any Collateral that is, or is evidenced by, instruments, chattel paper or negotiable documents will be properly assigned to and the originals of any such Collateral in tangible form deposited with and held by Bank, unless Bank shall hereafter otherwise direct or consent in writing. Bank may, without notice, before or after maturity of the Secured Obligations, exercise any or all rights of collection, conversion, or exchange and other similar rights, privileges and options pertaining to such Collateral, but shall have no duty to do so.

**COLLATERAL DUTIES.** Bank shall have no custodial or ministerial duties to perform with respect to Collateral pledged except as set forth herein, and by way of explanation and not by way of limitation, Bank shall incur no liability for any of the following: (i) loss or depreciation of Collateral (unless caused by its willful misconduct or gross negligence), (ii) failure to present any paper for payment or protest, to protest or give notice of nonpayment, or any other notice with respect to any paper or Collateral.

**TRANSFER OF COLLATERAL.** Bank may assign its rights in Collateral or any part thereof to any assignee who shall thereupon become vested with all the powers and rights herein given to Bank with respect to the property so transferred and delivered, and Bank shall thereafter be forever relieved and fully discharged from any liability with respect to such property so transferred, but with respect to any property not so transferred, Bank shall retain all rights and powers hereby given.

**INSPECTION, BOOKS AND RECORDS.** Debtor will at all times keep accurate and complete records covering each item of Collateral, including the proceeds therefrom. Bank, or any of its agents, shall have the right, at intervals to be determined by Bank and without hindrance or delay, at Debtor's expense, to inspect, audit, and examine the Collateral during normal business hours and to make copies of and extracts from the books, records, journals, orders, receipts, correspondence and other data relating to Collateral, Debtor's business or any other transaction between the parties hereto. Debtor will at its expense furnish Bank copies thereof upon request. For the further security of Bank, it is agreed that Bank has and is hereby granted a security interest in all books and records of Debtor pertaining to the Collateral.

**COMPLIANCE WITH LAW.** Debtor will comply with all federal, state and local laws and regulations, applicable to it, including without limitation, laws and regulations relating to the environment, labor or economic sanctions, in the creation, use, operation, manufacture and storage of the Collateral and the conduct of its business.

**REGULATION U.** None of the proceeds of the credit secured hereby shall be used directly or indirectly for the purpose of purchasing or carrying any margin stock in violation of any of the provisions of Regulation U of the Board of Governors of the Federal Reserve System ("Regulation U"), or for the purpose of reducing or retiring any indebtedness which was originally incurred to purchase or carry margin stock or for any other purchase which might render the Loan a "Purpose Credit" within the meaning of Regulation U.

**CROSS COLLATERALIZATION LIMITATION.** As to any other existing or future consumer purpose loan made by Bank to Debtor, within the meaning of the Federal Consumer Credit Protection Act, Bank expressly waives any security interest granted herein in Collateral that Debtor uses as a principal dwelling and household goods.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Debtor shall pay all of Bank's reasonable expenses actually incurred in enforcing this Security Agreement and in preserving and liquidating Collateral, including but not limited to, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred with or without the commencement of a suit, trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Security Agreement shall exist: **Loan Document Default.** A default under any Loan Document. **Collateral Loss or Destruction.** Any loss, theft, substantial damage, or destruction of Collateral not fully covered by insurance, or as to which insurance proceeds are not remitted to Bank within 30 days of the loss. **Collateral Sale, Lease or Encumbrance.** Any sale, lease, or encumbrance of any Collateral not specifically permitted herein without prior written consent of Bank. **Levy, Seizure or Attachment.** The making of any levy, seizure, or attachment on or of Collateral which is not removed within 10 days. **Cessation; Bankruptcy.** The death of, appointment of guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Debtor, its Subsidiaries or Affiliates if any, or any general partner of or the holder(s) of the majority ownership interests in Debtor or any party to the Loan Documents ("Affiliate" shall have the meaning as defined in 11 U.S.C. § 101, as in effect from time to time; and "Subsidiary" shall mean any business in which Debtor holds, directly or indirectly, a controlling interest). **Unauthorized Collection of Collateral.** Any attempt to collect, cash in or otherwise recover deposits that are Collateral. **Third Party Breach.** Any default or breach by a Third Party of any provision contained in any Control Agreement executed in connection with any of the Collateral. **Unauthorized Termination.** Any attempt to terminate, revoke, rescind, modify, or violate the terms of this Security Agreement or any Control Agreement without the prior written consent of Bank. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Secured Obligations are impaired or a material adverse change has occurred in the business or prospects of Debtor or Borrower or any guarantor, financial or otherwise.

**REMEDIES ON DEFAULT (INCLUDING POWER OF SALE).** If a Default occurs Bank shall have all the rights and remedies of a secured party under the Uniform Commercial Code. Without limitation thereto, Bank shall have the following rights and remedies (i) to take immediate possession of Collateral, without notice or resort to legal process, and for such purpose, to enter upon any premises on which Collateral or any part thereof may be situated and to remove the same therefrom, or, at its option, to render Collateral unusable or dispose of said Collateral on Debtor's premises; (ii) to require Debtor to assemble the Collateral and make it available to Bank at a place to be designated by Bank; (iii) to exercise its or its affiliate's right of set-off or Bank lien as to any monies of Debtor deposited in deposit accounts and investment accounts of any nature maintained by Debtor with Bank or affiliates of Bank, without advance notice, regardless of whether such accounts are general or special, (iv) to dispose of Collateral, as a unit or in parcels, separately or with any real property interests also securing the Secured Obligations, in any

county or place to be selected by Bank, at either private or public sale (at which public sale Bank may be the purchaser) with or without having the Collateral physically present at said sale.

Any notice of sale, disposition or other action by Bank required by law and sent to Debtor at Debtor's address shown above, or at such other address of Debtor as may from time to time be shown on the records of Bank, at least 5 days prior to such action, shall constitute reasonable notice to Debtor. Notice shall be deemed given or sent when mailed postage prepaid to Debtor's address as provided herein. Bank shall be entitled to apply the proceeds of any sale or other disposition of the Collateral, and the payments received by Bank with respect to any of the Collateral, to Secured Obligations in such order and manner as Bank may determine. Collateral that is subject to rapid declines in value and is customarily sold in recognized markets may be disposed of by Bank in a recognized market for such collateral without providing notice of sale. Debtor waives any and all requirements that the Bank sell or dispose of all or any part of the Collateral at any particular time, regardless of whether Debtor has requested such sale or disposition.

**REMEDIES ARE CUMULATIVE.** No failure on the part of Bank to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Bank or any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any right, power or remedy. The remedies herein provided are cumulative and are not exclusive of any remedies provided by law, in equity, or in other Loan Documents

**INDEMNIFICATION.** Debtor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i) the Loan Documents or any failure or alleged failure of Debtor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Documents, (ii) the Collateral or any claim of loss or damage to the Collateral or any injury or claim of injury to, or death of, any person or property that may be occasioned by any cause whatsoever pertaining to the Collateral or the use, occupancy or operation thereof, (iii) any failure or alleged failure of Debtor to comply with any law, rule or regulation applicable to it or to the Collateral or the use, occupancy or operation of the Collateral (including, without limitation, the failure to pay any taxes, fees or other charges), (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Bank relating in any way to or any matter contemplated by the Loan Documents, or (v) any claim for brokerage fees or such other commissions relating to the Collateral or any other Secured Obligations. Nothing contained herein shall require Debtor to indemnify Bank for any Damages resulting from Bank's gross negligence or its willful misconduct, and such indemnity shall be effective only to the extent of any Damages that may be sustained by Bank in excess of any net proceeds received by it from any insurance of Debtor (other than self-insurance) with respect to such Damages. The indemnity provided for herein shall survive payment of the Secured Obligations and shall extend to the officers, directors, employees and duly authorized agents of Bank. In the event Bank incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Secured Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Secured Obligations from the date incurred until paid and shall be payable on demand.

**MISCELLANEOUS.** (i) **Amendments and Waivers.** No waiver, amendment or modification of any provision of this Security Agreement shall be valid unless in writing and signed by Debtor and an officer of Bank. No waiver by Bank of any Default shall operate as a waiver of any other Default or of the same Default on a future occasion. (ii) **Assignment.** All rights of Bank hereunder are freely assignable, in whole or in part, and shall inure to the benefit of and be enforceable by Bank, its successors, assigns and affiliates. Debtor shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Debtor to assign without Bank's prior written consent is null and void. Any assignment shall not release Debtor from the Secured Obligations. This Security Agreement shall be binding upon Debtor, and the heirs, personal representatives, successors, and assigns of Debtor. (iii) **Organization; Powers.** Debtor represents that Debtor (a) is (1) an adult individual and is sui juris, or (2)

a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization, (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Agreement and any other Loan Document to which it is a party.   (iv) **Applicable Law; Conflict Between Documents.** This Security Agreement shall be governed by and construed under the law of the jurisdiction named in the address of the Bank shown on the first page hereof without regard to that Jurisdiction's conflict of laws principles, except to the extent that the UCC requires the application of the law of a different jurisdiction. If any terms of this Security Agreement conflict with the terms of any commitment letter or loan proposal, the terms of this Security Agreement shall control   (v) **Jurisdiction.** Debtor irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above.   (vi) **Severability.** If any provision of this Security Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Agreement.   (vii) **Payments.** All payments shall be mailed to Commercial Loan Services, P. O. Box 740502, Atlanta, GA  30374-0502; or such other address as provided by Bank in writing.   (viii) **Notices.** Any notices to Debtor shall be sufficiently given, if in writing and mailed or delivered to the address of Debtor shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA  24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA  24011 or such other address as Bank may specify in writing from time to time.  Notices to Bank must include the mail code.  In the event that Debtor changes Debtor's mailing address at any time prior to the date the Secured Obligations are paid in full, Debtor agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid   (ix) **Captions.** The captions contained herein are inserted for convenience only and shall not affect the meaning or interpretation of this Security Agreement or any provision hereof   The use of the plural shall also mean the singular, and vice versa   (x) **Joint and Several Liability.** If more than one party has signed this Security Agreement, such parties are jointly and severally obligated hereunder.  (xi) **Binding Contract.** Debtor by execution and Bank by acceptance of this Security Agreement, agree that each party is bound by all terms and provisions of this Security Agreement.  (xii) **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES   EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.  (xiii) **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties. There are no unwritten agreements between the parties

**DEFINITIONS. Loan Documents.** The term "Loan Documents" refers to all documents, including this Agreement, whether now or hereafter existing, executed in connection with or related to the Secured Obligations, and may include, without limitation and whether executed by Debtor or others, commitment letters that survive closing, loan agreements, promissory notes, guaranty agreements, deposit or other similar agreements, other security agreements, letters of credit and applications for letters of credit, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time).   **Third Party.** The term "Third Party" means any Broker,

Collateral Agent, Securities Intermediary and/or bank which from time to time maintains a securities account, and is acting in such capacity, for Debtor or maintains a deposit account for Debtor with respect to any part of the Collateral  **UCC.**  "UCC" means the Uniform Commercial Code as presently and hereafter enacted in the Jurisdiction.  **Terms defined in the UCC.**  Any term used in this Agreement and in any financing statement filed in connection herewith which is defined in the UCC and not otherwise defined in this Agreement or any other Loan Document has the meaning given to the term in the UCC.

**WAIVER OF JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF DEBTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SECURITY AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS SECURITY AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS SECURITY AGREEMENT.  EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS SECURITY AGREEMENT

**IN WITNESS WHEREOF**, Debtor, on the day and year first written above, has caused this Security Agreement to be duly executed under seal

**Debtor**

D & B Farm Center, L.L.C.

By: _____ (SEAL)
    Jerrell Branch, Member

By: _____ (SEAL)
    Gregory Scott Denney, Member

CAT - Deal # 1576169528  Facility ID 1576169736

EXHIBIT E

# PROMISSORY NOTE

$50,000.00

May 29, 2007

D & B Farm Center, L L C
12075 County Road 5
Ashland, Alabama  36251

Gregory Scott Denney
12134 County Road 5
Ashland, Alabama  36251
(Individually and collectively, "Borrower")

Wachovia Bank, National Association
Birmingham, Alabama  35203
(Hereinafter referred to as "Bank")

Borrower promises to pay to the order of Bank, in lawful money of the United States of America by mailing to the address specified hereinafter or wherever else Bank may specify, the sum of Fifty Thousand and No/100 Dollars ($50,000.00) or such sum as may be advanced and outstanding from time to time, with interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**LINE OF CREDIT.** Borrower may borrow, repay and reborrow, and, upon the request of Borrower, Bank shall advance and readvance under this Note from time to time (each an "Advance" and together the "Advances"), so long as the total principal balance outstanding under this Note at any one time does not exceed the principal amount stated on the face of this Note, subject to the limitations described in any loan agreement to which this Note is subject.  Bank's obligation to make Advances under this Note shall terminate if a demand for payment is made under this Note or if a Default (as defined in the other Loan Documents) under any Loan Document occurs or in any event, on the first anniversary hereof unless renewed or extended by Bank in writing upon such terms then satisfactory to Bank.  As of the date of each proposed Advance, Borrower shall be deemed to represent that each representation made in the Loan Documents is true as of such date. **30-Day Payout.**  During the term of the Note, Borrower agrees to pay down the outstanding balance to a maximum of $100.00 for 30 consecutive days annually.

If Borrower subscribes to Bank's cash management services and such services are applicable to this line of credit, the terms of such service shall control the manner in which funds are transferred between the applicable demand deposit account and the line of credit for credit or debit to the line of credit.

**USE OF PROCEEDS.**  Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows:  Short Term Working Capital.

**SECURITY.**  D & B Farm Center, L.L.C. has granted Bank a security interest in the collateral described in the Loan Documents, including, but not limited to, real and personal property collateral described in that certain security instrument of even date herewith and personal property collateral described in that certain Security Agreement of even date herewith.

**INTEREST RATE.**  Interest shall accrue on the unpaid principal balance of this Note from the date hereof at the Bank's Prime Rate minus 0.5%, as that rate may change from time to time in accordance with changes in the Bank's Prime Rate ("Interest Rate")  "Bank's Prime Rate" means that rate announced by Bank from time to time as its prime rate and is one of several interest rate bases used by Bank.  Bank



lends at rates both above and below Bank's Prime Rate, and Borrower acknowledges that Bank's Prime Rate is not represented or intended to be the lowest or most favorable rate of interest offered by Bank.

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a default in the payment of Obligations occurs, all outstanding Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank or its affiliates, shall bear interest at the Interest Rate plus 3% ("Default Rate"). The Default Rate shall also apply from demand until the Obligations or any judgment thereon is paid in full

**INTEREST AND FEE(S) COMPUTATION (ACTUAL/360).** Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

**REPAYMENT TERMS.** This Note shall be due and payable in consecutive monthly payments of accrued interest only, commencing on June 29, 2007, and continuing on the same day of each month thereafter until fully paid. In any event, this Note shall be due and payable in full, including all principal and accrued interest, on demand.

**APPLICATION OF PAYMENTS.** Monies received by Bank from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. Upon the occurrence of a default in the payment of the Obligations or a Default (as defined in the other Loan Documents) under any other Loan Document, monies may be applied to the Obligations in any manner or order deemed appropriate by Bank.

If any payment received by Bank under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Bank because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made

**DEFINITIONS. Loan Documents.** The term "Loan Documents", as used in this Note and the other Loan Documents, refers to all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time). **Obligations.** The term "Obligations", as used in this Note and the other Loan Documents, refers to any and all indebtedness and other obligations under this Note, all other obligations under any other Loan Document(s), and all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Bank, or its affiliates, whenever executed. **Certain Other Terms.** All terms that are used but not otherwise defined in any of the Loan Documents shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made, Borrower shall also pay to Bank a late charge equal to 5% of each payment past due for 10 or more days. This late charge shall not apply to payments due at maturity or by acceleration hereof, unless such late payment is in an amount not greater than the highest periodic payment due hereunder.

Acceptance by Bank of any late payment without an accompanying late charge shall not be deemed a waiver of Bank's right to collect such late charge or to collect a late charge for any subsequent late payment received.

If this Note is secured by owner-occupied residential real property located outside the state in which the office of Bank first shown above is located, the late charge laws of the state where the real property is located shall apply to this Note and the late charge shall be the highest amount allowable under such laws. If no amount is stated thereunder, the late charge shall be 5% of each payment past due for 10 or more days.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**USURY.** If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Bank in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

**DEMAND NOTE.** This is a demand Note and all Obligations hereunder shall become immediately due and payable upon demand. In addition, the Obligations hereunder shall automatically become immediately due and payable if Borrower or any guarantor or endorser of this Note commences or has commenced against it a bankruptcy or insolvency proceeding.

**REMEDIES.** Upon the occurrence of a default in the payment of the Obligations or a Default (as defined in the other Loan Documents) under any other Loan Document, Bank may at any time thereafter, take the following actions: **Bank Lien.** Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice. **Cumulative.** Exercise any rights and remedies as provided under the Note and the other Loan Documents, or as provided by law or equity.

**FINANCIAL AND OTHER INFORMATION.** Borrower shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition. Such information shall be true, complete, and accurate.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank of any Default (as defined in the other Loan Documents) shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank in exercising any right, power, or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Loan Documents or prohibited by law, each Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, each agrees that Bank may (i) extend, modify or renew this Note or make a novation of the loan evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to any Borrower or other person liable under this Note or any other Loan Documents, all without notice to or consent of each Borrower and other such person, and without affecting the liability of each Borrower and other such person; provided, Bank may not extend, modify or renew this Note or make a novation of the loan evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Bank may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note and the other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives,

535080 (Rev 26 0)     Page 3      Note doc

successors and assigns  Bank's interests in and rights under this Note and the other Loan Documents are freely assignable, in whole or in part, by Bank. In addition, nothing in this Note or any of the other Loan Documents shall prohibit Bank from pledging or assigning this Note or any of the other Loan Documents or any interest therein to any Federal Reserve Bank. Borrower shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Borrower to assign without Bank's prior written consent is null and void. Any assignment shall not release Borrower from the Obligations  **Organization; Powers.**  Borrower represents that Borrower (i) is (a) an adult individual and is <u>sui juris</u>, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Note and any other Loan Document to which it is a party. **Compliance with Laws.**  Borrower represents that Borrower and any subsidiary and affiliate of Borrower and any guarantor are in compliance in all respects with all federal, state and local laws, rules and regulations applicable to its operations, business, and finances, including, without limitation, any federal or state laws relating to liquor (including 18 U.S.C §  3617, et seq.) or narcotics (including 21 U.S.C. § 801, et seq.) and/or any commercial crimes; all applicable federal, state and local laws and regulations intended to protect the environment; and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if applicable.  None of Borrower, or any subsidiary or affiliate of Borrower or any guarantor is a Sanctioned Person or has any of its assets in a Sanctioned Country or does business in or with, or derives any of its operating income from investments in or transactions with, Sanctioned Persons or Sanctioned Countries in violation of economic sanctions administered by OFAC  The proceeds from the Loan will not be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Country. "OFAC" means the U.S. Department of the Treasury's Office of Foreign Assets Control. "Sanctioned Country" means a country subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcement/ofac/sanctions/, or as otherwise published from time to time. "Sanctioned Person" means (i) a person named on the list of Specially Designated Nationals or Blocked Persons maintained by OFAC available at http://www.treas.gov/offices/enforcement/ofac/sdn/, or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country, (B) an organization controlled by a Sanctioned Country, or (C) a person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC. **Applicable Law; Conflict Between Documents.**  This Note and, unless otherwise provided in any other Loan Document, the other Loan Documents shall be governed by and interpreted the laws of the state named in Bank's address on the first page hereof without regard to that state's conflict of laws principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control. **Borrower's Accounts.**  Except as prohibited by law, Borrower grants Bank a security interest in all of Borrower's deposit accounts and investment property with Bank and any of its affiliates.  **Swap Agreements.**  All swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), if any, between Borrower and Bank or its affiliates are independent agreements governed by the written provisions of said swap agreements, which will remain in full force and effect, unaffected by any repayment, prepayment, acceleration, reduction, increase or change in the terms of this Note, except as otherwise expressly provided in said written swap agreements, and any payoff statement from Bank relating to this Note shall not apply to said swap agreements except as otherwise expressly provided in such payoff statement  **Jurisdiction.**  Borrower irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above.  **Severability.**  If any provision of this Note or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document.  **Payments.**  All payments shall be mailed to Bank at Commercial Loan Services, P O Box 740502, Atlanta, GA  30374-0502; or other such address as provided by Bank in writing  **Notices.**  Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to the Borrower's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail

07152P302606

Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Borrower changes Borrower's address at any time prior to the date the Obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid **Plural; Captions.** All references in the Loan Documents to Borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual, person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Advances.** Bank may, in its sole discretion, make other advances which shall be deemed to be advances under this Note, even though the stated principal amount of this Note may be exceeded as a result thereof **Posting of Payments.** All payments received during normal banking hours after 2:00 p m local time at the office of Bank first shown above shall be deemed received at the opening of the next banking day. **Joint and Several Obligations.** If there is more than one Borrower, each is jointly and severally obligated together with all other parties obligated for the Obligations. **Fees and Taxes.** Borrower shall promptly pay all documentary, intangible recordation and/or similar taxes on this transaction whether assessed at closing or arising from time to time. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Patriot Act Notice.** To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. For purposes of this section, account shall be understood to include loan accounts **Final Agreement.** This Note and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties. There are no unwritten agreements between the parties.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS NOTE EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS NOTE.

**IN WITNESS WHEREOF**, Borrower, on the day and year first above written, has caused this Note to be duly executed under seal.

D & B Farm Center, L.L.C.

By: _Jerell Branch, Member_ _____ (SEAL)
Jerrell Branch, Member

By: _Gregory Scott Denney, Member_ _____ (SEAL)
Gregory Scott Denney, Member

_Gregory Scott Denney_ _____(SEAL)
Gregory Scott Denney

CAT - Deal # 1576169528  Facility ID 1576169736

07152P302606

EXHIBIT F

JUN 1 2 2007

RLEST     314     309

PREPARED BY  Kathy Giller
RETURN TO  Wachovia Bank, National Association
Commercial Loan Services
Collateral Servicing Department NC6038
P O  Box 2705
Winston Salem, NC 27199-8182

# MORTGAGE AND ASSIGNMENT OF RENTS

This MORTGAGE AND ASSIGNMENT OF RENTS (hereafter referred to as "Mortgage") made May 29, 2007, by and between Wachovia Bank, National Association, a national banking association, whose address is Birmingham, Alabama  35203 ("Bank"), and D & B Farm Center, L.L.C., whose address is 12075 County Road 5, Ashland, Alabama  36251 ("Mortgagor")  Bank is the mortgagee hereunder for indexing purposes by the judge of probate.

### W I T N E S S E T H :

To secure payment and performance of obligations under a Promissory Note (the "Note") dated May 29, 2007, in the amount of $50,000 00, made by D & B Farm Center, LLC and Gregory Scott Denney (the "Borrower") payable to Bank, this Mortgage), any present or future Letters of Credit issued by Bank for the account of Borrower, other loan documents as defined in the Note (the "Loan Documents"), and swap agreements (as defined in 11 U S C § 101, as in effect from time to time), all other indebtedness of Borrower to Bank whenever borrowed or incurred, whether or not reasonably contemplated by the parties hereto as of the date hereof, and any renewals, extensions, novations, or modifications of the foregoing (collectively the "Obligations"), and in consideration of these premises and for other consideration, Mortgagor does mortgage, grant, bargain, sell and convey, with power of sale unto Bank (for itself and its affiliates), its successors and assigns all of Mortgagor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"):  (i) all those certain tracts of land in the County of Clay, State of Alabama described in EXHIBIT A attached hereto and made part hereof (the "Land"); (ii) all buildings and improvements now or hereafter erected on the Land; (iii) all fixtures attached to the Land or any buildings or improvements situated thereon; and (iv) all estates, rights, tenements, hereditaments, privileges, rents, issues, profits easements, and appurtenances of any kind benefiting the Land; all means of access to and from the Land, whether public or private, and all water and mineral rights

In the event that Mortgagor is the owner of a leasehold estate with respect to any portion of the Property and Mortgagor obtains a fee estate in such portions of the Property, then, such fee estate shall automatically, and without further action of any kind on the part of the Mortgagor, be and become subject to the security title and lien of this Agreement

TO HAVE AND TO HOLD the Property and all the estate, right, title and interest, in law and in equity, of Mortgagor's in and to the Property unto Bank, its successors and assigns, forever.

Mortgagor WARRANTS AND REPRESENTS that Mortgagor is lawfully seized of the Property, in fee simple, absolute, that Mortgagor has the legal right to convey and encumber the same, and that the Property is free and clear of all liens and encumbrances.  Mortgagor further warrants and will forever defend all and singular the Property and title thereto to Bank and Bank's successors and assigns, against the lawful claims of all persons whomsoever

545724 (Rev 21 0)    WPSI1576169736001        CDDOTMXXXX        mi_main doc

DOTM

05- 5395545894 -34

PROVIDED ALWAYS that if (i) all the Obligations (including without limitation, all termination payments and any other amounts due under or in connection with any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) secured hereunder) are paid in full, (ii) each and every representation, warranty, agreement, covenant and condition of this Mortgage, and the other Loan Documents, are complied with and abided by, and (iii) any and all swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) secured hereunder have matured or been terminated, then this Mortgage and the estate hereby created shall cease and be null, void, and canceled of record.

To protect the security of this Mortgage, Mortgagor further represents and agrees with Bank as follows.

**Payment of Obligations.** That the Obligations shall be timely paid and performed.

**Future Advances.** This Mortgage is given to secure not only existing Obligations, but also future advances, including obligations under swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) to the same extent as if such future advances and obligations under swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) are made on the date of the execution of this Mortgage. The principal amount (including any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) and future advances) that may be so secured may decrease or increase from time to time, but the total amount so secured at any one time shall not exceed $50,000.00, plus all interest, costs, reimbursements, fees and expenses due under this Mortgage and secured hereby. Mortgagor shall not execute any document that impairs or otherwise impacts the priority of any existing or future Obligations secured by this Mortgage.

Nothing herein obligates Bank to provide credit in excess of the Obligations

**Leases, Subleases and Easements.** Mortgagor shall maintain, enforce and cause to be performed all of the terms and conditions under any lease, sublease or easement which may constitute a portion of the Property. Mortgagor shall not, without the consent of Bank (which consent shall not be unreasonably withheld or delayed), enter into any new lease of all or any portion of the Property, agree to the cancellation or surrender under any lease of all or any portion of the Property, agree to prepayment of rents, issues or profits (other than rent paid at the signing of a lease or sublease), modify any such lease so as to shorten the term, decrease the rent, accelerate the payment of rent, or change the terms of any renewal option; and any such purported new lease, cancellation, surrender, prepayment or modification made without the consent of Bank shall be void as against Bank.

**Required Insurance.** Mortgagor shall maintain with respect to the Property· (i) during construction of any improvements on the Property, "all-risk" builders risk insurance which must include windstorm, hail damage, fire and vandalism (non-reporting Completed Value with Special Cause of Loss form), in an amount not less than the completed replacement value of the improvements under construction, naming Bank as mortgagee and loss payee; (ii) upon completion of construction, upon occupancy of any improvements, and at all other times, insurance against loss or damage by fire and other casualties and hazards by insurance written on an "all risks" basis, including malicious mischief coverage, in an amount not less than the replacement cost thereof, including coverage for loss of rents or business interruption if applicable, naming Bank as loss payee and mortgagee; (iii) if the Property is required to be insured pursuant to the National Flood Reform Act of 1994, and the regulations promulgated thereunder, flood insurance is required in the amount equal to the lesser of the loan amount or maximum available under the National Flood Insurance Program, but in no event should the amount of coverage be less than the value of the improved structure, naming Bank as mortgagee and loss payee. If, after closing, the Property (or any part thereof) is remapped and if the vertical improvements are determined to be located in a special flood hazard area, Mortgagor must obtain and maintain a flood insurance policy If, within forty-five (45) days of receipt of notification from Bank that the Property has been reclassified by FEMA as being located in a special flood hazard area, Mortgagor has not provided sufficient evidence of flood insurance, Bank is mandated under federal law to purchase flood insurance on behalf of Mortgagor, and Bank will add the associated costs to the principal balance of the Note. If the land or any portion thereof is located in a special flood hazard area, this Agreement may be terminated by

RLEST 314 311

Bank at its sole option; (iv) as applicable, insurance which complies with the workers' compensation and employers' liability laws of all states in which Mortgagor shall be required to maintain such insurance; and (v) liability insurance providing coverage in such amount as Bank may require but in no event less than $1,000,000.00 combined single limit, naming Bank as an additional insured; and (vi) such other insurance as Bank may require from time to time.

All property insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Bank that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Mortgagor and the further agreement (within both the property and liability policies) of the insurer waiving rights of subrogation against Bank, and rights of set-off, counterclaim or deductions against Mortgagor.

All insurance policies shall be in form, provide coverages, be issued by companies and be in amounts satisfactory to Bank. At least 30 days prior to the expiration of each such policy, Mortgagor shall furnish Bank with evidence satisfactory to Bank that such policy has been renewed or replaced or is no longer required hereunder. All such policies shall provide that the policy will not be canceled or materially amended without at least 30 days prior written notice to Bank. In the event Mortgagor fails to provide, maintain, keep in force, and furnish to Bank the policies of insurance required by this paragraph, Bank may procure such insurance or single-interest insurance in such amounts, at such premium, for such risks and by such means as Bank chooses, at Mortgagor's expense; provided however, Bank shall have no responsibility to obtain any insurance, but if Bank does obtain insurance, Bank shall have no responsibility to assure that the insurance obtained shall be adequate or provide any protection to Mortgagor.

**Insurance Proceeds.** After occurrence of any loss to any of the Property, Mortgagor shall give prompt written notice thereof to Bank.

In the event of such loss all insurance proceeds, including unearned premiums, shall be payable to Bank, and Mortgagor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Bank and not to Bank and Mortgagor jointly. Bank is hereby authorized by Mortgagor to make proof of loss if not promptly made by Mortgagor, settle, adjust or compromise any claims for loss or damage under any policy or policies of insurance and Mortgagor appoints Bank as its attorney-in-fact to receive and endorse any insurance proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied. Mortgagor shall pay the costs of collection, including attorneys' fees, of insurance proceeds payable on account of such damage or destruction. Mortgagor shall have no claim against the insurance proceeds, or be entitled to any portion thereof, and all rights to the insurance proceeds are hereby assigned to Bank as security for payment of the Obligations.

In the event of any damage to or destruction of the Property, Bank shall have the option of applying or paying all or part of the insurance proceeds to (i) the Obligations in such order as Bank may determine, (ii) restoration, replacement or repair of the Property in accordance with Bank's standard construction loan disbursement conditions and requirements, or (iii) Mortgagor. Nothing herein shall be deemed to excuse Mortgagor from restoring, repairing and maintaining the Property as required herein.

**Impositions; Escrow Deposit.** Mortgagor will pay all taxes, levies, assessments and other fees and charges imposed upon or which may become a lien upon the Property under any law or ordinance (all of the foregoing collectively "Impositions") before they become delinquent and in any event in the same calendar year in which they first become due. Upon request of Bank, Mortgagor shall add to each periodic payment required under the Note the amount estimated by Bank to be sufficient to enable Bank to pay, as they come due, all Impositions and insurance premiums which Mortgagor is required to pay hereunder. Payments requested under this provision shall be supplemented or adjusted as required by Bank from time to time. Such funds may be commingled with the general funds of Bank and shall not earn interest. Upon the occurrence of a Default, Bank may apply such funds to pay any of the Obligations.

RLEST    314    312

**Use of Property.** Mortgagor shall use and operate, and require its lessees or licensees to use and operate, the Property in compliance with all applicable laws (including, for example, the Americans with Disabilities Act and the Fair Housing Act) and ordinances, covenants, and restrictions, and with all applicable requirements of any lease or sublease now or hereafter affecting the Property. Mortgagor shall not permit any unlawful use of the Property or any use that may give rise to a claim of forfeiture of any of the Property. Mortgagor shall not allow changes in the stated use of Property from that disclosed to Bank at the time of execution hereof. Mortgagor shall not initiate or acquiesce to a zoning change of the Property without prior notice to, and written consent of, Bank.

**Maintenance, Repairs and Alterations.** Mortgagor shall keep and maintain the Property in good condition and repair and fully protected from the elements to the satisfaction of Bank. Mortgagor will not remove, demolish or structurally alter any of the buildings or other improvements on the Property (except such alterations as may be required by laws, ordinances or regulations) without the prior written consent of Bank. Mortgagor shall promptly notify Bank in writing of any material loss, damage or adverse condition affecting the Property.

**Eminent Domain.** Should the Property or any interest therein be taken or damaged by reason of any public use or improvement or condemnation proceeding ("Condemnation"), or should Mortgagor receive any notice or other information regarding such Condemnation, Mortgagor shall give prompt written notice thereof to Bank. Bank shall be entitled to all compensation, awards and other payments or relief granted in connection with such Condemnation and, at its option, may commence, appear in and prosecute in its own name any action or proceedings relating thereto. Bank shall be entitled to make any compromise or settlement in connection with such taking or damage. All compensation, awards, and damages awarded to Mortgagor related to any Condemnation (the "Proceeds") are hereby assigned to Bank and Mortgagor agrees to execute such further assignments of the Proceeds as Bank may require. Bank shall have the option of applying or paying the Proceeds in the same manner as insurance proceeds as provided herein. Mortgagor appoints Bank as its attorney-in-fact to receive and endorse the Proceeds to Bank, which appointment is coupled with an interest and shall be irrevocable as long as any Obligations remain unsatisfied.

**Environmental Condition of Property and Indemnity.** Mortgagor warrants and represents to Bank, except as reported by Mortgagor to Bank in writing, that: (i) Mortgagor has inspected and is familiar with the environmental condition of the Property; (ii) the Property and Mortgagor, and any occupants of the Property, are in compliance with and shall continue to be in compliance with all applicable federal, state and local laws and regulations intended to protect the environment and public health and safety as the same may be amended from time to time ("Environmental Laws"), (iii) the Property is not and has never been used to generate, handle, treat, store or dispose of, in any quantity, oil, petroleum products, hazardous or toxic substances, hazardous waste, regulated substances or hazardous air pollutants ("Hazardous Materials") in violation of any Environmental Laws; (iv) no Hazardous Materials (including asbestos, mold or lead paint in any form) are located on or under the Property or emanate from the Property; (v) there are no unregistered underground storage tanks on the Property that are subject to any underground storage tank registration laws or regulations; (vi) no notice has been received with regard to any Hazardous Material on the Property, (vii) no action, investigation or proceeding is pending or to Mortgagor's knowledge threatened which seeks to enforce any right or remedy against Mortgagor or the Property under any Environmental Law; and (viii) all licenses, permits and other governmental or regulatory actions necessary for the Property to comply with Environmental Laws shall be obtained and maintained and Mortgagor shall assure compliance therewith.

Further, Mortgagor represents to Bank that no portion of the Property is a protected wetland. Mortgagor agrees to notify Bank immediately upon receipt of any citations, warnings, orders, notices, consent agreements, process or claims alleging or relating to violations of any Environmental Laws or to the environmental condition of the Property and shall conduct and complete all investigations and all cleanup actions necessary to comply with the Environmental Laws and to remove, in accordance with Environmental Laws, any Hazardous Material from the Property.

Mortgagor shall indemnify, hold harmless, and defend Bank from and against any and all damages, penalties, fines, claims, suits, liabilities, costs, judgments and expenses, including attorneys', consultants' or experts' fees of every kind and nature incurred, suffered by or asserted against Bank as a direct or indirect result of: (i) representations made by Mortgagor in this Section being or becoming untrue in any material respect; (ii) Mortgagor's violation of or failure to meet the requirements of any Environmental Laws; or (iii) Hazardous Materials which, while the Property is subject to this Mortgage, exist on the Property. Bank shall have the right to arrange for or conduct environmental inspections of the Property from time to time (including the taking of soil, water, air or material samples). The cost of such inspections made after Default (as hereinafter defined) or which are required by laws or regulations applicable to Bank shall be borne by Mortgagor. However, Mortgagor's indemnity shall not apply to any negligent or intentional act of Bank which takes place after foreclosure or satisfaction of this Mortgage. These indemnification obligations are in addition to General Indemnification provisions set forth hereafter. Mortgagor's Obligations under this section shall continue, survive and remain in full force and effect notwithstanding the repayment of the Obligations, a foreclosure of or exercise of power of sale under this instrument, a delivery of a deed in lieu of foreclosure, a cancellation or termination of record of this instrument and the transfer of the Property.

**Appraisals.** Mortgagor agrees that Bank may obtain an appraisal of the Property when required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency, or any other regulatory agency or at such other times as Bank may reasonably require. Such appraisals shall be performed by an independent third party appraiser selected by Bank. The cost of such appraisals shall be borne by Mortgagor. If requested by Bank, Mortgagor shall execute an engagement letter addressed to the appraiser selected by Bank. Mortgagor's failure or refusal to sign such an engagement letter, however, shall not impair Bank's right to obtain such an appraisal. Mortgagor agrees to pay the cost of such appraisal within 10 days after receiving an invoice for such appraisal.

**Inspections.** Bank, or its representatives or agents, are authorized to enter at any reasonable time upon any part of the Property for the purpose of inspecting the Property and for the purpose of performing any of the acts it is authorized to perform under the terms of this Mortgage.

**Liens and Subrogation.** Mortgagor shall pay and promptly discharge all liens, claims and encumbrances upon the Property. Mortgagor shall have the right to contest in good faith the validity of any such lien, claim or encumbrance, provided: (i) such contest suspends the collection thereof or there is no danger of the Property being sold or forfeited while such contest is pending; (ii) Mortgagor first deposits with Bank a bond or other security satisfactory to Bank in such amounts as Bank shall reasonably require; and (iii) Mortgagor thereafter diligently proceeds to cause such lien, claim or encumbrance to be removed and discharged.

Bank shall be subrogated to any liens, claims and encumbrances against Mortgagor or the Property that are paid or discharged through payment by Bank or with loan proceeds, notwithstanding the record cancellation or satisfaction thereof.

**Waiver of Mortgagor's Rights.** To the fullest extent permitted by law, Mortgagor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Property, (ii) in any way extending the time for the enforcement of the collection of the Note or the debt evidenced thereby or any of the other Obligations, and any rights to hearing prior to the exercise by Bank of any right, power, or remedy herein provided to Bank.

To the full extent Mortgagor may do so, Mortgagor agrees that Mortgagor will not at any time insist upon, plead, claim or seek to take the benefit or advantage of any law now or hereafter in force providing for any exemption (including homestead exemption), appraisement, valuation, stay, extension or redemption, and Mortgagor for themselves and their respective heirs, devisees, representatives, successors and assigns, and for any and all persons claiming any interest in the Property, to the extent permitted by law, hereby waive and release all rights of valuation, appraisement, redemption, stay of execution, the benefit of all exemption laws, notice of election to mature or declare due the whole of the secured indebtedness and marshalling in the event of foreclosure of the liens hereby created. Mortgagor

further waives any and all notices including, without limitation, notice of intention to accelerate and of acceleration of the Obligations.

**Payments by Bank.** In the event of Default (as hereinafter defined) in the timely payment or performance of any of the Obligations, Bank, at its option and without any duty on its part to determine the validity or necessity thereof, may pay the sums for which Mortgagor is obligated. Further, Bank may pay such sums as Bank deems appropriate for the protection and maintenance of the Property including, without limitation, sums to pay Impositions and other levies, assessments or liens, maintain insurance, make repairs, secure the Property, maintain utility service, intervene in any condemnation and pay attorneys' fees and other fees and costs to enforce this Mortgage or protect the lien hereof (including foreclosure) or collect the Obligations, without limitation, including those incurred in any proceeding including bankruptcy or arbitration. Any amounts so paid shall bear interest at the default rate stated in the Note and shall be secured by this Mortgage.

**Indemnification.** Mortgagor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i) the Loan Documents or any failure or alleged failure of Mortgagor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Documents, (ii) the Collateral or any claim of loss or damage to the Property or any injury or claim of injury to, or death of, any person or property that may be occasioned by any cause whatsoever pertaining to the Property or the use, occupancy or operation thereof, (iii) any failure or alleged failure of Mortgagor to comply with any law, rule or regulation applicable to it or to the Property or the use, occupancy or operation of the Property (including, without limitation, the failure to pay any taxes, fees or other charges), (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Bank relating in any way to or any matter contemplated by the Loan Documents, (v) any claim for brokerage fees or such other commissions relating to the Property or any other Obligations, or (vi) any and all liability arising from any leases related to the Property. Nothing contained herein shall require Mortgagor to indemnify Bank for any Damages resulting from Bank's gross negligence or its willful and wrongful acts, and such indemnity shall be effective only to the extent of any Damages that may be sustained by Bank in excess of any net proceeds received by it from any insurance of Mortgagor (other than self-insurance) with respect to such Damages. The indemnity provided for herein shall survive payment of the Obligations and shall extend to the officers, directors, employees and duly authorized agents of Bank. In the event the Bank incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Obligations from the date incurred until paid and shall be payable on demand.

**Assignment of Rents.** Mortgagor hereby absolutely assigns and transfers to Bank all the leases, rents, issues and profits of the Property (collectively "Rents"). Although this assignment is effective immediately, so long as no Default exists, Bank gives to and confers upon Mortgagor the privilege under a revocable license to collect as they become due, but not prior to accrual, the Rents and to demand, receive and enforce payment, give receipts, releases and satisfactions, and sue in the name of Mortgagor for all such Rents. Mortgagor represents there has been no prior assignment of leases or Rents, and agrees not to further assign such leases or Rents. Upon any occurrence of Default, the license granted to Mortgagor herein shall be automatically revoked without further notice to or demand upon Mortgagor, and Bank shall have the right, in its discretion, without notice, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the Obligations, (i) to enter upon and take possession of the Property, (ii) notify tenants, subtenants and any property manager to pay Rents to Bank or its designee, and upon receipt of such notice such persons are authorized and directed to make payment as specified in the notice and disregard any contrary direction or instruction by Mortgagor, and (iii) in its own name, sue for or otherwise collect Rents, including those past due, and apply Rents, less costs and expenses of operation and collection, including attorneys' fees, to the Obligations in such order and manner as Bank may determine or as otherwise provided for herein.

RLEST    314    315

Bank's exercise of any one or more of the foregoing rights shall not cure or waive any Default or notice of *Default hereunder.*

**Due on Sale or Further Encumbrance or Transfer of an Interest in Mortgagor.**  Without the prior written consent of Bank in each instance, Mortgagor shall not (i) sell, convey, transfer or encumber the Property, or any part thereof or interest therein, whether legal or equitable, (ii) cause or permit any transfer of the Property or any part thereof, whether voluntarily, involuntarily or by operation of law, or (iii) enter into any agreement or transaction to transfer, or accomplish in form or substance a transfer, of the Property.  A "transfer" of the Property includes:  (a) the direct or indirect sale, transfer or conveyance of the Property or any portion thereof or interest therein, (b) the execution of an installment sale contract or similar instrument affecting all or any portion of the Property; (c) if Mortgagor or any general partner or member of Mortgagor, is a corporation, partnership, limited liability company, trust or other business entity, the transfer, pledge, assignment or encumbrance (whether in one transaction or a series of transactions) of any stock, partnership, limited liability company or other ownership interests in such corporation, partnership, limited liability company or entity including, without limitation, changes in stockholders, partners, members, managers, trustees, beneficiaries, or their respective interests; whether directly or indirectly; (d) if Mortgagor, or any general partner or member of Mortgagor, is a corporation, the creation or issuance of new stock by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders; and (e) an agreement by Mortgagor leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of or the grant of a security interest in and to any Leases.

Bank's consent to any conveyance or encumbrance may be conditioned upon an increase in the interest rate specified in the Note (or other Obligations), an extension or curtailment of the maturity of the Obligations, or other modification of the Note or this instrument.

**Remedies of Bank on Default.**  Failure of Mortgagor or any other person liable to timely pay or perform any of the Obligations is a default ("Default") under this Mortgage.  Upon the occurrence of Default the following remedies are available, without limitation, to Bank.  (i) Bank may exercise any or all of Bank's remedies under this Mortgage or other Loan Documents including, without limitation, acceleration of the maturity of all payments and Obligations, other than Obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) with Bank or any of its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time); (ii) Bank may take immediate possession of the Property or any part thereof (which Mortgagor agrees to surrender to Bank) and manage, control or lease the same to such persons and at such rental as it may deem proper and collect and apply Rents to the payment of.  (a) the Obligations, together with all costs and attorneys' fees; (b) all Impositions and any other levies, assessments or liens which may be prior in lien or payment to the Obligations, and premiums for insurance, with interest on all such items, and (c) the cost of all alterations, repairs, replacements and expenses incident to taking and retaining possession of the Property and the management and operation thereof, all in such order or priority as Bank in its sole discretion may determine.  The taking of possession shall not prevent concurrent or later proceedings for the foreclosure sale of the Property; (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rents therefrom as hereinabove provided.  In the event of such application, Mortgagor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Mortgagor, without regard to whether Mortgagor has committed waste or permitted deterioration of the Property, without regard to the adequacy of any security for the Obligations, and without regard to the solvency of Mortgagor or any other person, firm or corporation who or which may be liable for the payment of the Obligations, (iv) Bank may sell all or part of the Property (referred to as "Sale") pursuant to power of sale (which is hereby granted) by public sale conducted at the courthouse door in the county in which any part of the Property is located after publishing once a week for three successive weeks in some newspaper published in such county notice of such sale providing the time of such Sale, and republish and conduct in the same manner additional Sales as may be required until all of the Property is sold or the Obligations are satisfied]; (v) With respect to any portion of the Property governed by the UCC, Bank shall have all of

the rights and remedies of a secured party thereunder. Bank may elect to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property; (vi) Bank may bid at Sale and may accept, as successful bidder, credit of the bid amount against the Obligations as payment of any portion of the purchase price; and (vii) Bank shall apply the proceeds of Sale, first to any fees or attorney fees permitted Bank by law in connection with Sale, second to expenses of foreclosure, publication, and sale permitted Bank by law in connection with Sale, third to the Obligations, and any remaining proceeds as required by law.

**Miscellaneous Provisions.** Mortgagor agrees to the following: (i) All remedies available to Bank with respect to this Mortgage or available at law or in equity shall be cumulative and may be pursued concurrently or successively. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default. Any payment by Bank or acceptance by Bank of any partial payment shall not constitute a waiver by Bank of any Default; (ii) Mortgagor represents that Mortgagor (a) is (1) an adult individual and is sui juris, or (2) a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Mortgage and any other Loan Document to which it is a party. (iii) The provisions hereof shall be binding upon and inure to the benefit of Mortgagor, its heirs, personal representatives, successors and assigns including, without limitation, subsequent owners of the Property or any part thereof, and shall be binding upon and inure to the benefit of Bank, its successors and assigns and any future holder of the Note or other Obligations; (iv) Any notices, demands or requests shall be sufficiently given Mortgagor if in writing and mailed or delivered to the address of Mortgagor shown above or to another address as provided herein and to Bank if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011, or such other address as Bank may specify from time to time and in the event that Mortgagor changes Mortgagor's address at any time prior to the date the Obligations are paid in full, that party shall promptly give written notice of such change of address by registered or certified mail, return receipt requested, all charges prepaid. Notices to Bank must include the mail code. (v) All payments shall be mailed to Commercial Loan Services, P. O. Box 740502, Atlanta, GA 30374-0502; or such other address as provided by Bank in writing. (vi) This Mortgage may not be changed, terminated or modified orally or in any manner other than by an instrument in writing signed by the parties hereto, (vii) All references to "Bank" shall mean to "Bank (for itself and its affiliate)"; (viii) The captions or headings at the beginning of each paragraph hereof are for the convenience of the parties and are not a part of this Mortgage; (ix) If the lien of this Mortgage is invalid or unenforceable as to any part of the Obligations, the unsecured portion of the Obligations shall be completely paid (and all payments made shall be deemed to have first been applied to payment of the unsecured portion of the Obligations) prior to payment of the secured portion of the Obligations and if any clause, provision or obligation hereunder is determined invalid or unenforceable the remainder of this Mortgage shall be construed and enforced as if such clause, provision or obligation had not been contained herein; (x) This Mortgage shall be governed by and construed under the laws of the jurisdiction where this Mortgage is recorded; (xi) Mortgagor by execution and Bank by acceptance of this Mortgage agree to be bound by the terms and provisions hereof. **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR

CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties   There are no unwritten agreements between the parties.

**Minimum Standards.**  In addition to the requirements set forth in the Loan Documents, all surveys, insurance, title policies, construction documents, environmental reports, payment and performance bonds, and any other due diligence or additional documents required in connection with this Loan, shall comply with Bank's minimum standards in place from time to time for such documents, which shall be provided in writing by Bank to Borrower upon request.

**WAIVER OF JURY TRIAL.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, MORTGAGOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS DEED, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS DEED, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO.  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS DEED.

MORTGAGOR AND BANK AGREE THAT THEY SHALL NOT HAVE A REMEDY OF PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE OTHER IN ANY DISPUTE AND HEREBY WAIVE ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY HAVE NOW OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY DISPUTE WHETHER THE DISPUTE IS RESOLVED BY ARBITRATION OR JUDICIALLY.


        **IN WITNESS WHEREOF**, Mortgagor has duly signed and sealed this instrument as of the day and year first above written.


                   Mortgagor

                   D & B Farm Center, L L C

                   By: _____ (SEAL)
                        Jerrell Branch, Member


                   By: _____ (SEAL)
                        Gregory Scott Denney, Member

RLEST   314   318

State of Alabama
County of Clay

### L. L. C. Acknowledgment

I certify that before me appeared this day Jerrell Branch, a person known to me, who after being sworn stated he/she is Member of D & B Farm Center, L.L.C., a Alabama limited liability company and is duly authorized to act on behalf of said Company, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Company voluntarily and with full authority.

Witness my hand and official seal, this 27 day of May , 2009

_____, Notary Public

Notary Seal

Tonya Nolen
(Printed Name of Notary)

My Commission Expires: 7/24/09

State of Alabama
County of Clay

### L. L. C. Acknowledgment

I certify that before me appeared this day Gregory Scott Denney, a person known to me, who after being sworn stated he/she is Member of D & B Farm Center, L.L.C., a Alabama limited liability company and is duly authorized to act on behalf of said Company, and being informed of the contents thereof, acknowledged execution of the foregoing instrument on behalf of said Company voluntarily and with full authority.

Witness my hand and official seal, this 27 day of May , 2007

_____, Notary Public

Notary Seal

Tonya Nolen
(Printed Name of Notary)

My Commission Expires: 7/24/09

CAT - Deal # 1576169528  Facility ID 1576169736

545724 (Rev 21 0)          Page 10                    ml_main doc

RLEST   314   319

# EXHIBIT A

This Exhibit A is attached to a certain Mortgage by and between D & B Farm Center, L.L.C., and Wachovia Bank, National Association, securing that certain Promissory Note of even date herewith executed by D & B Farm Center, LLC and Gregory Scott Denney in the amount of $150,000.00 dated May 29, 2007.

LEGAL DESCRIPTION FOR ATTACHMENT TO MORTGAGE       RLEST   314   320

TO: WACHOVIA BANK

RE: D & B FARM CENTER, LLC

Commencing at a lightard knot in a ring of stones painted white and accepted as the NE corner of SE 1/4 of SE 1/4 of Section 1, Township 22 South, Range 7 East, Huntsville Meridian, Clay County, Alabama; thence South 77 degrees 23 minutes 24 seconds West a distance of 1513.17 feet to a point on the East ROW line of a paved public road known as County Road #5 as witnessed by an iron pin offset North 87 degrees 56 minutes 49 seconds West a distance of 2.17 feet, the NW corner of the parcel being described and the Point of Beginning; thence along a curve to the left having a degree of 05 degrees 44 minutes 17 seconds thence Southerly along said curve 253.70 feet along said curve having a chord direction of South 10 degrees 19 minutes 26 seconds East and a chord length of 253.02 feet, following the East ROW line of said paved road and the West line of the parcel being described to a point on said ROW line and the SW corner of the parcel being described as witnessed by an iron pin offset North 72 degrees 04 minutes 35 seconds East a distance of 4.57 feet; thence North 72 degrees 04 minutes 35 seconds East a distance of 185.50 feet along the South line of the parcel to an iron pin set as the SE corner of the parcel being described; thence North 02 degrees 56 minutes 17 seconds West a distance of 184.46 feet along the East line of the parcel to an iron pin set as the NE corner of the parcel being described; thence North 87 degrees 56 minutes 49 seconds West a distance of 212.52 feet along the North line of the parcel to the Point of Beginning; said parcel lying in the SW 1/4 of SE 1/4 and the SE 1/4 of SW 1/4 of Section 1 as referenced above. According to the survey map and plat dated April 16, 2004, prepared by John L. Ratley, Jr., Ala. Reg. No. 12157.

The undersigned do hereby incorporate the above description into the mortgage executed by them on _____5I29_____, 2007, as if said description were set out on the face thereof.


_____5I29I07_____
Date

_Jerrell Branch, Member_ (signature)
JERRELL BRANCH, Member


_Gregory Scott Denney, Member_ (signature)
GREGORY SCOTT DENNEY, Member


EXHIBIT "A"

EXHIBIT G

# SECURITY AGREEMENT

May 29, 2007

D & B Farm Center, L.L.C.
12075 County Road 5
Ashland, Alabama 36251
(Individually and collectively, "Debtor")

Wachovia Bank, National Association
Birmingham, Alabama 35203
(Hereinafter referred to as "Bank")

For value received and to secure payment and performance of any and all obligations of Gregory Scott Denney and D & B Farm Center, L.L.C. (collectively, "Borrower") to Bank however created, arising or evidenced, whether direct or indirect, absolute or contingent, now existing or hereafter arising or acquired, including swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time), future advances, and all costs and expenses incurred by Bank to obtain, preserve, perfect and enforce the security interest granted herein and to maintain, preserve and collect the property subject to the security interest (collectively, "Secured Obligations"), Debtor hereby grants to Bank a continuing security interest in and lien upon the following described property, whether now owned or hereafter acquired, and any additions, replacements, accessions, or substitutions thereof and all cash and non-cash proceeds and products thereof (collectively, "Collateral"):

All of the personal property of Debtor of every kind and nature including, without limitation, all accounts, equipment, accessions, inventory, chattel paper, instruments, investment property, documents, letter-of-credit rights, deposit accounts, and general intangibles, wherever located.

Debtor hereby represents and agrees that.

**OWNERSHIP.** Debtor owns the Collateral or Debtor will purchase and acquire rights in the Collateral within ten days of the date advances are made under the Loan Documents. If Collateral is being acquired with the proceeds of an advance under the Loan Documents, Debtor authorizes Bank to disburse proceeds directly to the seller of the Collateral. The Collateral is free and clear of all liens, security interests, and claims except those previously reported in writing to and approved by Bank, and Debtor will keep the Collateral free and clear from all liens, security interests and claims, other than those granted to or approved by Bank.

**NAME AND OFFICES; JURISDICTION OF ORGANIZATION.** The name and address of Debtor appearing at the beginning of this Agreement are Debtor's exact legal name and the address of its chief executive office. There has been no change in the name of Debtor, or the name under which Debtor conducts business, within the five years preceding the date hereof except as previously reported in writing to Bank. Debtor has not moved its chief executive office within the five years preceding the date hereof except as previously reported in writing to Bank. Debtor is organized under the laws of the State of Alabama and has not changed the jurisdiction of its organization within the five years preceding the date hereof except as previously reported in writing to Bank.

**TITLE/TAXES.** Debtor has good and marketable title to the Collateral and will warrant and defend same against all claims. Debtor will not transfer, sell, or lease Collateral (except as permitted herein). Debtor agrees to pay promptly all taxes and assessments upon or for the use of Collateral and on this Security Agreement. At its option, Bank may discharge taxes, liens, security interests or other encumbrances at any time levied or placed on Collateral. Debtor agrees to reimburse Bank, on demand, for any such payment made by Bank. Any amounts so paid shall be added to the Secured Obligations.

535096 (Rev 24 0)

SAGR

WPSI1576169734001   CDSAGRXXXX   Secagr doc

**WAIVERS AND ACKNOWLEDGMENTS.** Debtor agrees not to assert against Bank as a defense (legal or equitable), as a set-off, as a counterclaim, or otherwise, any claims Debtor may have against any seller or lessor that provided personal property or services relating to any part of the Collateral or against any Borrower or any other party liable to Bank for all or any part of the Secured Obligations. Debtor waives all exemptions and homestead rights with regard to the Collateral. Debtor waives any and all rights to any bond or security which might be required by applicable law prior to the exercise of any of Bank's remedies against any Collateral. All rights of Bank and security interests hereunder, and all obligations of Debtor hereunder, shall be absolute and unconditional, not discharged or impaired irrespective of (and regardless of whether Debtor receives any notice of): (i) any lack of validity or enforceability of any Loan Document; (ii) any change in the time, manner or place of payment or performance, or in any term, of all or any of the Secured Obligations or the Loan Documents or any other amendment or waiver of or any consent to any departure from any Loan Document; or (iii) any exchange, insufficiency, unenforceability, enforcement, release, impairment or non-perfection of any collateral, or any release of or modifications to or insufficiency, unenforceability or enforcement of the obligations of any guarantor or other obligor. To the extent permitted by law, Debtor hereby waives any rights under any valuation, stay, appraisement, extension or redemption laws now existing or which may hereafter exist and which, but for this provision, might be applicable to any sale or disposition of the Collateral by Bank; and any other circumstance which might otherwise constitute a defense available to, or a discharge of any party with respect to the Secured Obligations, including but not limited to the following.

Debtor **waives and releases the following rights, demands, and defenses** Debtor may have with respect to Bank and collection of the Secured Obligations (a) promptness and diligence in collection of any of the Secured Obligations from the Borrower or any other person liable thereon, and in foreclosure of any other security interest and sale of any other property serving as collateral for the Secured Obligations; (b) any law or statute that requires that Bank make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Debtor with respect to the Secured Obligations, including any such rights Debtor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, as in effect from time to time, O.C.G.A. § 10-7-24, Mississippi Code Ann. Section 87-5-1 and any successor statute and any other applicable law; (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of any action against Debtor, (d) notice of extensions, modifications, renewals, or novations of the Secured Obligations, of any new transactions or other relationships between Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any guarantor; (e) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity or notice of acceleration of maturity, (f) any right to which Debtor is or may become entitled to be subrogated to Bank's rights against Debtor or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank against Borrower or any security which Bank now has or hereafter acquires, until such time as the Secured Obligations have been fully satisfied beyond the expiration of any applicable preference period, (g) any claim or defense that acceleration of maturity of the Secured Obligations is stayed against Debtor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (h) the right to marshalling of Debtor's assets or the benefit of any exemption claimed by Debtor. Debtor acknowledges and represents that Debtor has relied upon Debtor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral, Debtor will continue to be responsible for making its own independent appraisal of such matters; and Debtor has not relied upon Bank for information regarding Borrower or any collateral.

**FINANCIAL CONDITION.** Debtor warrants, represents and covenants to Bank that on and after the date hereof (a) the fair saleable value of Debtor's assets exceeds its liabilities, Debtor is meeting its current liabilities as they mature, and Debtor is and shall remain solvent; (b) all financial statements of Debtor furnished to Bank are correct and accurately reflect the financial condition of Debtor as of the respective dates thereof; (c) since the date of such financial statements, there has not occurred a material adverse change in the financial condition of Debtor, (d) there are not now pending any court or administrative

proceedings or undischarged judgments against Debtor, no federal or state tax liens have been filed or threatened against Debtor, and Debtor is not in default or claimed default under any agreement; and (e) at such reasonable times as Bank requests, Debtor will furnish Bank with such other financial information as Bank may reasonably request.

**INTEREST AND APPLICATION OF PAYMENTS.** Regardless of any other provision of this Security Agreement or other Loan Documents, if for any reason the effective interest on any of the Secured Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Secured Obligations. Monies received from any source by Bank for application toward payment of the Secured Obligations may be applied to such Secured Obligations in any manner or order deemed appropriate by Bank.

**NOTIFICATIONS; LOCATION OF COLLATERAL.** Debtor will notify Bank in writing at least 30 days prior to any change in: (i) Debtor's chief place of business and/or residence; (ii) Debtor's name or identity; (iii) Debtor's corporate/organizational structure; or (iv) the jurisdiction in which Debtor is organized. In addition, Debtor shall promptly notify Bank of any claims or alleged claims of any other person or entity to the Collateral or the institution of any litigation, arbitration, governmental investigation or administrative proceedings against or affecting the Collateral. Debtor will keep Collateral at the location(s) previously provided to Bank until such time as Bank provides written advance consent to a change of location. Debtor will bear the cost of preparing and filing any documents necessary to protect Bank's liens.

**COLLATERAL CONDITION AND LAWFUL USE.** Debtor represents that the Collateral is in good repair and condition and that Debtor shall use reasonable care to prevent Collateral from being damaged or depreciating, normal wear and tear excepted. Debtor shall immediately notify Bank of any material loss or damage to Collateral. Debtor shall not permit any item of Collateral to become a fixture to real estate or an accession to other personal property unless such property is also Collateral hereunder. Debtor represents it is in compliance in all respects with all laws, rules and regulations applicable to the Collateral and its properties, operations, business, and finances

**RISK OF LOSS AND INSURANCE.** Debtor shall bear all risk of loss with respect to the Collateral. The injury to or loss of Collateral, either partial or total, shall not release Debtor from payment or other performance hereof. Debtor agrees to obtain and keep in force property insurance on the Collateral with a Lender's Loss Payable Endorsement in favor of Bank and commercial general liability insurance naming Bank as Additional Insured and such other insurance as Bank may require from time to time. Such insurance is to be in form and amounts satisfactory to Bank and issued by reputable insurance carriers satisfactory to Bank with a Best Insurance Report Key Rating of at least "A-". All such policies shall provide to Bank a minimum of 30 days written notice of cancellation. Debtor shall furnish to Bank such policies, or other evidence of such policies satisfactory to Bank. If Debtor fails to obtain or maintain in force such insurance or fails to furnish such evidence, Bank is authorized, but not obligated, to purchase any or all insurance or "Single Interest Insurance" protecting such interest as Bank deems appropriate against such risks and at such coverage and for such amounts, including either the loan amount or value of the Collateral, all at its discretion, and at Debtor's expense. In such event, Debtor agrees to reimburse Bank for the cost of such insurance and Bank may add such cost to the Secured Obligations. Debtor shall bear the risk of loss to the extent of any deficiency in the effective insurance coverage with respect to loss or damage to any of the Collateral. Debtor hereby assigns to Bank the proceeds of all property insurance covering the Collateral up to the amount of the Secured Obligations and directs any insurer to make payments directly to Bank. Debtor hereby appoints Bank its attorney-in-fact, which appointment shall be irrevocable and coupled with an interest for so long as Secured Obligations are unpaid, to file proof of loss and/or any other forms required to collect from any insurer any amount due from any damage or destruction of Collateral, to agree to and bind Debtor as to the amount of said recovery, to designate payee(s) of such recovery, to grant releases to insurer, to grant subrogation rights to any insurer, and to endorse any settlement check or draft. Debtor agrees not to exercise any of the foregoing powers granted to Bank without Bank's prior written consent.

**FINANCING STATEMENTS, CERTIFICATES OF TITLE, POWER OF ATTORNEY.** No financing statement (other than any filed or approved by Bank) covering any Collateral is on file in any public filing office. Debtor authorizes the filing of one or more financing statements covering the Collateral in form satisfactory to Bank, and without Debtor's signature where authorized by law, agrees to deliver certificates of title on which Bank's lien has been indicated covering any Collateral subject to a certificate of title statute, and will pay all costs and expenses of filing or applying for the same or of filing this Security Agreement in all public filing offices, where filing is deemed by Bank to be desirable. Debtor hereby constitutes and appoints Bank the true and lawful attorney of Debtor with full power of substitution to take any and all appropriate action and to execute any and all documents, instruments or applications that may be necessary or desirable to accomplish the purpose and carry out the terms of this Security Agreement, including, without limitation, to complete, execute, and deliver any Control Agreement(s) by Bank, Debtor and Third Party(ies) that may be or become required in connection herewith (individually and collectively the "Control Agreement"), and any instructions to Third Party(ies) regarding, among other things, control and disposition of any Collateral which is the subject of such Control Agreement(s) The foregoing power of attorney is coupled with an interest and shall be irrevocable until all of the Secured Obligations have been paid in full Neither Bank nor anyone acting on its behalf shall be liable for acts, omissions, errors in judgment, or mistakes in fact in such capacity as attorney-in-fact. Debtor ratifies all acts of Bank as attorney-in-fact Debtor agrees to take such other actions, at Debtor's expense, as might be requested for the perfection, continuation and assignment, in whole or in part, of the security interests granted herein and to assure and preserve Bank's intended priority position. If certificates, passbooks, or other documentation or evidence is/are issued or outstanding as to any of the Collateral, Debtor will cause the security interests of Bank to be properly protected, including perfection by notation thereon or delivery thereof to Bank.

**LANDLORD/MORTGAGEE WAIVERS.** Debtor shall cause each mortgagee of real property owned by Debtor and each landlord of real property leased by Debtor to execute and deliver instruments satisfactory in form and substance to Bank by which such mortgagee or landlord subordinates its rights, if any, in the Collateral.

**CONTROL.** Debtor will cooperate with Bank in obtaining control with respect to Collateral consisting of electronic chattel paper. Debtor authorizes and directs Third Party to comply with the terms of this Security Agreement, to enter into a Control Agreement, to mark its records to show the security interest of and/or the transfer to Bank of the property pledged hereunder.

**CHATTEL PAPER, ACCOUNTS, GENERAL INTANGIBLES.** Debtor warrants that Collateral consisting of chattel paper, accounts, or general intangibles is (i) genuine and enforceable in accordance with its terms; (ii) not subject to any defense, set-off, claim or counterclaim of a material nature against Debtor except as to which Debtor has notified Bank in writing; and (iii) not subject to any other circumstances that would impair the validity, enforceability, value, or amount of such Collateral except as to which Debtor has notified Bank in writing. Debtor shall not amend, modify or supplement any lease, contract or agreement contained in Collateral or waive any provision therein, without prior written consent of Bank. Debtor will not create any tangible chattel paper without placing a legend on the chattel paper acceptable to Bank indicating that Bank has a security interest in the chattel paper. Debtor will not create any electronic chattel paper without taking all steps deemed necessary by Bank to confer control of the electronic chattel paper upon Bank in accordance with the UCC

**ACCOUNT INFORMATION.** From time to time, at Bank's request, Debtor shall provide Bank with schedules describing all accounts, including customers' addresses, created or acquired by Debtor and at Bank's request shall execute and deliver assignments of contracts and other documents evidencing such accounts to Bank Together with each schedule, Debtor shall, if requested by Bank, furnish Bank with copies of Debtor's sales journals, invoices, customer purchase orders or the equivalent, and original shipping or delivery receipts for all goods sold, and Debtor warrants the genuineness thereof.

**ACCOUNT DEBTORS.** If a Default should occur, Bank shall have the right to notify the account debtors obligated on any or all of the Collateral to make payment thereof directly to Bank and Bank may take control of all proceeds of any such Collateral, which rights Bank may exercise at any time. The cost of

such collection and enforcement, including attorneys' fees and expenses, shall be borne solely by Debtor whether the same is incurred by Bank or Debtor If a Default should occur or upon demand of Bank, Debtor will, upon receipt of all checks, drafts, cash and other remittances in payment on Collateral, deposit the same in a special bank account maintained with Bank, over which Bank also has the power of withdrawal

If a Default should occur, no discount, credit, or allowance shall be granted by Debtor to any account debtor and no return of merchandise shall be accepted by Debtor without Bank's consent. Bank may, after Default, settle or adjust disputes and claims directly with account debtors for amounts and upon terms that Bank considers advisable, and in such cases Bank will credit the Secured Obligations with the net amounts received by Bank, after deducting all of the expenses incurred by Bank. Debtor agrees to indemnify and defend Bank and hold it harmless with respect to any claim or proceeding arising out of any matter related to collection of Collateral.

**GOVERNMENT CONTRACTS.** If any Collateral covered hereby arises from obligations due to Debtor from any governmental unit or organization, Debtor shall immediately notify Bank in writing and execute all documents and take all actions deemed necessary by Bank to ensure recognition by such governmental unit or organization of the rights of Bank in the Collateral.

**INVENTORY.** So long as no Default has occurred, Debtor shall have the right in the regular course of business, to process and sell Debtor's inventory. If a Default should occur or upon demand of Bank, Debtor will, upon receipt of all checks, drafts, cash and other remittances, in payment of Collateral sold, deposit the same in a special bank account maintained with Bank over which Bank also has the power of withdrawal. Debtor agrees to notify Bank immediately in the event that any inventory purchased by or delivered to Debtor is evidenced by a bill of lading, dock warrant, dock receipt, warehouse receipt or other document of title and to deliver such document to Bank upon request.

**INSTRUMENTS, CHATTEL PAPER, DOCUMENTS.** Any Collateral that is, or is evidenced by, instruments, chattel paper or negotiable documents will be properly assigned to and the originals of any such Collateral in tangible form deposited with and held by Bank, unless Bank shall hereafter otherwise direct or consent in writing. Bank may, without notice, before or after maturity of the Secured Obligations, exercise any or all rights of collection, conversion, or exchange and other similar rights, privileges and options pertaining to such Collateral, but shall have no duty to do so.

**COLLATERAL DUTIES.** Bank shall have no custodial or ministerial duties to perform with respect to Collateral pledged except as set forth herein; and by way of explanation and not by way of limitation, Bank shall incur no liability for any of the following: (i) loss or depreciation of Collateral (unless caused by its willful misconduct or gross negligence), (ii) failure to present any paper for payment or protest, to protest or give notice of nonpayment, or any other notice with respect to any paper or Collateral.

**TRANSFER OF COLLATERAL.** Bank may assign its rights in Collateral or any part thereof to any assignee who shall thereupon become vested with all the powers and rights herein given to Bank with respect to the property so transferred and delivered, and Bank shall thereafter be forever relieved and fully discharged from any liability with respect to such property so transferred, but with respect to any property not so transferred, Bank shall retain all rights and powers hereby given.

**INSPECTION, BOOKS AND RECORDS.** Debtor will at all times keep accurate and complete records covering each item of Collateral, including the proceeds therefrom. Bank, or any of its agents, shall have the right, at intervals to be determined by Bank and without hindrance or delay, at Debtor's expense, to inspect, audit, and examine the Collateral during normal business hours and to make copies of and extracts from the books, records, journals, orders, receipts, correspondence and other data relating to Collateral, Debtor's business or any other transaction between the parties hereto Debtor will at its expense furnish Bank copies thereof upon request. For the further security of Bank, it is agreed that Bank has and is hereby granted a security interest in all books and records of Debtor pertaining to the Collateral.

**COMPLIANCE WITH LAW.** Debtor will comply with all federal, state and local laws and regulations, applicable to it, including without limitation, laws and regulations relating to the environment, labor or economic sanctions, in the creation, use, operation, manufacture and storage of the Collateral and the conduct of its business.

**REGULATION U.** None of the proceeds of the credit secured hereby shall be used directly or indirectly for the purpose of purchasing or carrying any margin stock in violation of any of the provisions of Regulation U of the Board of Governors of the Federal Reserve System ("Regulation U"), or for the purpose of reducing or retiring any indebtedness which was originally incurred to purchase or carry margin stock or for any other purchase which might render the Loan a "Purpose Credit" within the meaning of Regulation U

**CROSS COLLATERALIZATION LIMITATION.** As to any other existing or future consumer purpose loan made by Bank to Debtor, within the meaning of the Federal Consumer Credit Protection Act, Bank expressly waives any security interest granted herein in Collateral that Debtor uses as a principal dwelling and household goods.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Debtor shall pay all of Bank's reasonable expenses actually incurred in enforcing this Security Agreement and in preserving and liquidating Collateral, including but not limited to, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred with or without the commencement of a suit, trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding

**DEFAULT.** If any of the following occurs, a default ("Default") under this Security Agreement shall exist: **Loan Document Default.** A default under any Loan Document. **Collateral Loss or Destruction.** Any loss, theft, substantial damage, or destruction of Collateral not fully covered by insurance, or as to which insurance proceeds are not remitted to Bank within 30 days of the loss. **Collateral Sale, Lease or Encumbrance.** Any sale, lease, or encumbrance of any Collateral not specifically permitted herein without prior written consent of Bank. **Levy, Seizure or Attachment.** The making of any levy, seizure, or attachment on or of Collateral which is not removed within 10 days. **Cessation; Bankruptcy.** The death of, appointment of guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any bankruptcy or insolvency proceeding by or against Debtor, its Subsidiaries or Affiliates if any, or any general partner of or the holder(s) of the majority ownership interests in Debtor or any party to the Loan Documents ("Affiliate" shall have the meaning as defined in 11 U.S.C § 101, as in effect from time to time; and "Subsidiary" shall mean any business in which Debtor holds, directly or indirectly, a controlling interest). **Unauthorized Collection of Collateral.** Any attempt to collect, cash in or otherwise recover deposits that are Collateral. **Third Party Breach.** Any default or breach by a Third Party of any provision contained in any Control Agreement executed in connection with any of the Collateral. **Unauthorized Termination.** Any attempt to terminate, revoke, rescind, modify, or violate the terms of this Security Agreement or any Control Agreement without the prior written consent of Bank. **Material Adverse Change.** Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Secured Obligations are impaired or a material adverse change has occurred in the business or prospects of Debtor or Borrower or any guarantor, financial or otherwise.

**REMEDIES ON DEFAULT (INCLUDING POWER OF SALE).** If a Default occurs Bank shall have all the rights and remedies of a secured party under the Uniform Commercial Code. Without limitation thereto, Bank shall have the following rights and remedies: (i) to take immediate possession of Collateral, without notice or resort to legal process, and for such purpose, to enter upon any premises on which Collateral or any part thereof may be situated and to remove the same therefrom, or, at its option, to render Collateral unusable or dispose of said Collateral on Debtor's premises; (ii) to require Debtor to assemble the Collateral and make it available to Bank at a place to be designated by Bank; (iii) to exercise its or its affiliate's right of set-off or Bank lien as to any monies of Debtor deposited in deposit accounts and investment accounts of any nature maintained by Debtor with Bank or affiliates of Bank, without advance notice, regardless of whether such accounts are general or special; (iv) to dispose of Collateral, as a unit or in parcels, separately or with any real property interests also securing the Secured Obligations, in any

county or place to be selected by Bank, at either private or public sale (at which public sale Bank may be the purchaser) with or without having the Collateral physically present at said sale

Any notice of sale, disposition or other action by Bank required by law and sent to Debtor at Debtor's address shown above, or at such other address of Debtor as may from time to time be shown on the records of Bank, at least 5 days prior to such action, shall constitute reasonable notice to Debtor   Notice shall be deemed given or sent when mailed postage prepaid to Debtor's address as provided herein. Bank shall be entitled to apply the proceeds of any sale or other disposition of the Collateral, and the payments received by Bank with respect to any of the Collateral, to Secured Obligations in such order and manner as Bank may determine.   Collateral that is subject to rapid declines in value and is customarily sold in recognized markets may be disposed of by Bank in a recognized market for such collateral without providing notice of sale.  Debtor waives any and all requirements that the Bank sell or dispose of all or any part of the Collateral at any particular time, regardless of whether Debtor has requested such sale or disposition.

**REMEDIES ARE CUMULATIVE.**  No failure on the part of Bank to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Bank or any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any right, power or remedy   The remedies herein provided are cumulative and are not exclusive of any remedies provided by law, in equity, or in other Loan Documents.

**INDEMNIFICATION**   Debtor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages") imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i) the Loan Documents or any failure or alleged failure of Debtor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Documents, (ii) the Collateral or any claim of loss or damage to the Collateral or any injury or claim of injury to, or death of, any person or property that may be occasioned by any cause whatsoever pertaining to the Collateral or the use, occupancy or operation thereof, (iii) any failure or alleged failure of Debtor to comply with any law, rule or regulation applicable to it or to the Collateral or the use, occupancy or operation of the Collateral (including, without limitation, the failure to pay any taxes, fees or other charges), (iv) any Damages whatsoever by reason of any alleged action, obligation or undertaking of Bank relating in any way to or any matter contemplated by the Loan Documents, or (v) any claim for brokerage fees or such other commissions relating to the Collateral or any other Secured Obligations   Nothing contained herein shall require Debtor to indemnify Bank for any Damages resulting from Bank's gross negligence or its willful misconduct, and such indemnity shall be effective only to the extent of any Damages that may be sustained by Bank in excess of any net proceeds received by it from any insurance of Debtor (other than self-insurance) with respect to such Damages. The indemnity provided for herein shall survive payment of the Secured Obligations and shall extend to the officers, directors, employees and duly authorized agents of Bank   In the event Bank incurs any Damages arising out of or in any way relating to the transaction contemplated by the Loan Documents (including any of the matters referred to in this section), the amounts of such Damages shall be added to the Secured Obligations, shall bear interest, to the extent permitted by law, at the interest rate borne by the Secured Obligations from the date incurred until paid and shall be payable on demand.

**MISCELLANEOUS.**  (i) **Amendments and Waivers.**  No waiver, amendment or modification of any provision of this Security Agreement shall be valid unless in writing and signed by Debtor and an officer of Bank.  No waiver by Bank of any Default shall operate as a waiver of any other Default or of the same Default on a future occasion.  (ii) **Assignment.**  All rights of Bank hereunder are freely assignable, in whole or in part, and shall inure to the benefit of and be enforceable by Bank, its successors, assigns and affiliates.  Debtor shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Debtor to assign without Bank's prior written consent is null and void.  Any assignment shall not release Debtor from the Secured Obligations.  This Security Agreement shall be binding upon Debtor, and the heirs, personal representatives, successors, and assigns of Debtor.  (iii) **Organization; Powers.**  Debtor represents that Debtor (a) is (1) an adult individual and is sui juris, or (2)

a corporation, general partnership, limited partnership, limited liability company or other legal entity, duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization; (b) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (c) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Agreement and any other Loan Document to which it is a party. (iv) **Applicable Law; Conflict Between Documents.** This Security Agreement shall be governed by and construed under the law of the jurisdiction named in the address of the Bank shown on the first page hereof without regard to that Jurisdiction's conflict of laws principles, except to the extent that the UCC requires the application of the law of a different jurisdiction. If any terms of this Security Agreement conflict with the terms of any commitment letter or loan proposal, the terms of this Security Agreement shall control. (v) **Jurisdiction.** Debtor irrevocably agrees to non-exclusive personal jurisdiction in the state identified as the Jurisdiction above. (vi) **Severability.** If any provision of this Security Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Agreement. (vii) **Payments.** All payments shall be mailed to Commercial Loan Services, P. O. Box 740502, Atlanta, GA 30374-0502; or such other address as provided by Bank in writing. (viii) **Notices.** Any notices to Debtor shall be sufficiently given, if in writing and mailed or delivered to the address of Debtor shown above or such other address as provided hereunder; and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7628, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7628, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Debtor changes Debtor's mailing address at any time prior to the date the Secured Obligations are paid in full, Debtor agrees to promptly give written notice of said change of address by registered or certified mail, return receipt requested, all charges prepaid. (ix) **Captions.** The captions contained herein are inserted for convenience only and shall not affect the meaning or interpretation of this Security Agreement or any provision hereof. The use of the plural shall also mean the singular, and vice versa. (x) **Joint and Several Liability.** If more than one party has signed this Security Agreement, such parties are jointly and severally obligated hereunder. (xi) **Binding Contract.** Debtor by execution and Bank by acceptance of this Security Agreement, agree that each party is bound by all terms and provisions of this Security Agreement (xii) **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE. (xiii) **Final Agreement.** This Agreement and the other Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties. There are no unwritten agreements between the parties.

**DEFINITIONS. Loan Documents.** The term "Loan Documents" refers to all documents, including this Agreement, whether now or hereafter existing, executed in connection with or related to the Secured Obligations, and may include, without limitation and whether executed by Debtor or others, commitment letters that survive closing, loan agreements, promissory notes, guaranty agreements, deposit or other similar agreements, other security agreements, letters of credit and applications for letters of credit, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) **Third Party.** The term "Third Party" means any Broker,

Collateral Agent, Securities Intermediary and/or bank which from time to time maintains a securities account, and is acting in such capacity, for Debtor or maintains a deposit account for Debtor with respect to any part of the Collateral. **UCC.** "UCC" means the Uniform Commercial Code as presently and hereafter enacted in the Jurisdiction. **Terms defined in the UCC.** Any term used in this Agreement and in any financing statement filed in connection herewith which is defined in the UCC and not otherwise defined in this Agreement or any other Loan Document has the meaning given to the term in the UCC.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF DEBTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SECURITY AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS SECURITY AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO  THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS SECURITY AGREEMENT.  EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS SECURITY AGREEMENT.

**IN WITNESS WHEREOF,** Debtor, on the day and year first written above, has caused this Security Agreement to be duly executed under seal.

**Debtor**

D & B Farm Center, L L C.

By: _Jerrell Branch, Member_ _____ (SEAL)
Jerrell Branch, Member

By: _Gregory Scott Denney, Member_ _____ (SEAL)
Gregory Scott Denney, Member

CAT - Deal # 1576169528  Facility ID 1576169734

EXHIBIT H



**BAKER DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

WELLS FARGO TOWER
420 TWENTIETH STREET NORTH
SUITE 1600
BIRMINGHAM, ALABAMA 35203
PHONE: 205.328.0480
FAX: 205.322.8007

www.bakerdonelson.com

DANIEL J. FERRETTI
**Direct Dial:** (205) 250-8338
**Direct Fax:** (205) 488-3738
**E-Mail Address:** dferretti@bakerdonelson.com

February 24, 2011

***Via Federal Express***

D & B Farm Center
12075 County Road 5
Ashland, Alabama  36251

Jerrell Branch
11920 County Road 5
Ashland, Alabama  36251

Gregory Scott Denney
12134 County Road 5
Ashland, Alabama  36251

### *DEMAND FOR PAYMENT*

**Re:   Loan ("Loan 18") in the original stated principal amount of $150,000.00 from Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, National Association ("Lender") to D & B Farm Center, L.L.C. ("D&B") and Gregory Scott Denney ("Denney", and together with D&B, collectively, "Borrower"), as guaranteed by Jerrell Branch ("Guarantor", and together with Borrower, collectively, "Obligors") and Loan ("Loan 34" together and collectively with Loan 18, the "Loans") in the original stated principal amount of $50,000.00 from Lender to Borrower, as guaranteed by Guarantor**

To Whom It May Concern:

This firm represents Lender in connection with the Loans. Lender is the owner and holder of the following documents relating to the Loans (collectively, the "Loan Documents"):

Loan 18

1.   That certain Promissory Note dated May 29, 2007, in the original stated principal amount of $150,000.00, made by Borrower payable to Lender to evidence Loan 18 (as assumed, amended, and modified from time to time, the "Loan 18 Note");

2.   That certain Security Agreement dated May 29, 2007, made by D&B in favor of Lender (the "Loan 18 Security Agreement") by which D&B pledged certain personal property more particularly described in the Security Agreement to Lender to secure Loan 18;

B MNS 959321 v1
1039341-000026

February 24, 2011
Page 2

3.   That certain Mortgage and Assignment of Rents dated May 29, 2007, made by Borrower in favor of Lender and recorded on June 6, 2007, in the Office of the Judge of Probate of Clay County, Alabama, at Real Estate Book 314, Page 297 (as assumed, amended, and modified from time to time, the "Loan 18 Mortgage," and together with the "Loan 18 Security Agreement", collectively, the "Loan 18 Security Instruments");

4.   That certain Unconditional Guaranty dated May 29, 2007, executed by Guarantor in favor of Lender (the "Guaranty Agreement"); and

5.   All other documents, instruments and agreements, including without limitation, UCC-1 Financing Statements evidencing, referring, securing, or relating to Loan 18.

<u>Loan 34</u>

1.   That certain Promissory Note dated May 29, 2007, in the original stated principal amount of $50,000.00, made by Borrower payable to Lender to evidence Loan 34 (as assumed, amended, and modified from time to time, the "Loan 34 Note", and together with the Loan 18 Note, collectively, the "Notes");

2.   That certain Security Agreement dated May 29, 2007, made by D&B in favor of Lender (the "Loan 34 Security Agreement") by which Borrower pledged certain personal property more particularly described in the Security Agreement to Lender to secure the Loan;

3.   That certain Mortgage and Assignment of Rents dated May 29, 2007, made by Borrower in favor of Lender and recorded in the Office of the Judge of Probate of Clay County, Alabama, at Real Estate Book 314, Page 309 (as assumed, amended, and modified from time to time, the "Loan 34 Mortgage," and together with the "Loan 34 Security Agreement", collectively, the "Loan 34 Security Instruments"; the Loan 18 Security Instruments and the Loan 34 Security Instruments are referred to herein, collectively, as the "Security Instruments");

4.   The Guaranty Agreement; and

5.   All other documents, instruments and agreements, including without limitation, UCC-1 Financing Statements evidencing, referring, securing, or relating to the Loan.

All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Documents.

The Loan 34 Note is due and payable on demand. Events of Default have occurred and are continuing under the Loan Documents, including, without limitation, the failure of Borrower

February 24, 2011
Page 3

to make payments as required under the Loan Documents.  Due to the Events of Default, Lender hereby accelerates the maturity of the Loan 18 Note.

Accordingly, demand is hereby made for the immediate payment of all amounts due under the Loan Documents, including, without limitation, the entire outstanding principal balance of the Notes, together with all accrued and unpaid interest, late charges and all other amounts due and owing under the Loan Documents (collectively, the "Debt") calculated as follows:

Loan 18

| | | |
|---|---|---|
| Principal | $ | 110,798.91 |
| Interest as of February 14, 2011 | $ | 3,188.03 |
| Late Fees | $ | 89.27 |
| Expenses | $ | 700.00 |
| Loan 18 Total as of February 14, 2011: | $ | 114,776.21 |

Loan 34

| | | |
|---|---|---|
| Principal | $ | 35,833.39 |
| Interest as of February 14, 2011 | $ | 82.31 |
| Late Fees | $ | 41.66 |
| Expenses | $ | 300.00 |
| Total Loan 34 as of February 14, 2011 | $ | 36,257.36 |

**Total Debt as of February 14, 2011** | **$** | **151,033.57**

Interest continues to accrue at the Default Rate, if implemented, on the outstanding principal balance of the Loan until Lender receives payment in full in good and immediately available funds.

This letter constitutes formal demand upon Obligors to pay the Debt to Lender immediately together with all applicable charges and all costs, expenses and attorneys' fees incurred by Lender in connection with collection of the indebtedness as provided for in the Loan Documents (collectively, the "Loan Obligations").  On behalf of and at the request and direction of Lender, formal demand is hereby made for payment of the total amount due and payable (plus any interest which accrues on or before the date of payment) at or before 12:00 noon, ten (10) days from the date of this letter.

If the Loan Obligations are not paid at or before the aforesaid date and time, then Obligors are advised that Lender intends to exercise its remedies available under the Loan Documents or otherwise at law or in equity, and furthermore, additional attorneys' fees and other costs of collection incurred by Lender shall accrue for which Obligors may be liable.  In the event that certain property described in the Security Instruments is sold at a judicial or nonjudicial foreclosure sale for an amount insufficient to satisfy the entire unpaid principal

February 24, 2011
Page 4

balance of and all accrued but unpaid interest on the Notes and all other amounts due thereunder, Obligors will be liable for the deficiency, subject to any limitations on liability, including, but not limited to, constitutional limitations, statutory limitations and/or any limitations on liability contained within the Loan Documents.

All of Lender's claims, demands and accruals regarding the above-referenced Loan Obligations, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

Lender reserves the right to exercise, in such order as Lender elects, any one or more of the remedies available to Lender pursuant to the Loan Documents or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and remedies. Any negotiations between Obligors and Lender shall not constitute a waiver of Lender's right to exercise its rights and remedies under the Loan Documents or otherwise at law or in equity, including, but not limited to, those described in this letter. Any such waiver shall not be effective unless set forth in writing, duly executed by an authorized representative of Lender. Obligors shall not be entitled to rely upon any verbal statements made or purported to be made by or on behalf of Lender in connection with any alleged agreement by or on behalf of Lender to refrain from exercising any of its rights under the Loan Documents or otherwise at law or in equity. Please be advised that no past or future delay or omission in the exercise of any right or remedy accruing to Lender as a result of any default is intended to constitute a waiver of any right or remedy accruing to Lender as a result of that default or any other default.

Payment to Lender of less than all Loan Obligations due and owing under the Notes, together with all interest accrued thereon, should not be construed as an accord and satisfaction or as Lender's agreement to accept a lesser amount as payment in full of the Debt. Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment may not be deemed to be an accord and satisfaction. Lender may accept any such payment or turnover of the collateral securing the Loan without prejudice to its rights to receive the balance of all Loan Obligations due under the terms of the Loan Documents or to pursue its remedies.

Please note that we have no further obligation or duty to inform Obligors of Lender's intentions to exercise its rights and remedies under the Loan Documents. We are, however, doing so in this letter as an accommodation to Obligors. Obligors shall not be entitled to expect notice in the future of Lender's elections or specifications under any of the Loan Documents by reason of Lender's election to provide notices and specifications in this letter.

**THIS FIRM AND LENDER ARE ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE LOAN DOCUMENTS AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, TERMS AND PROVISIONS CONTAINED WITHIN THE LOAN DOCUMENTS AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

B MNS 959321 v1
1039341-000026

February 24, 2011
Page 5

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation.  This notice is given pursuant to 11 U.S.C. Section 362(b)(11), if applicable.

Neither this letter nor any statement by or on behalf of Lender as to the amount due and owing under the Loan Documents, (i) shall constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents or otherwise at law or in equity; or (ii) shall constitute an accord and satisfaction or waiver of any rights of Lender under the Loan Documents.

A copy of this letter has been sent to the Guarantor to alert him to the severity of the situation.  Please contact the undersigned immediately if you have any questions concerning the matters contained in this letter.  Your prompt attention to these serious matters is appreciated.

Sincerely,

Daniel J. Ferretti

cc:    Julian Bennett

B MNS 959321 v1
1039341-000026

Page 1 of 1

From: (205) 250-8336    Origin ID: CZCA
Mary-Noel Sellers
Baker Donelson Bearman Caldwell
420 20th Street North
Suite 1600
Birmingham, AL 35205



Ship Date: 24FEB11
ActWgt: 1.0 LB
CAD: 101572210/INET3130

J1110101222D225

Delivery Address Bar Code

SHIP TO: (205) 250-8336    BILL SENDER

**D & B FARM CENTER**
**D & B FARM CENTER**
**12075 COUNTY ROAD 5**

**ASHLAND, AL 36521**

Ref #    011808 1039341-000226
Invoice #
PO #
Dept #

**MON - 28 FEB  PM**
**** 2DAY ****

TRK#  **7968 0210 5564**
0201

**SB MOBA**

**36521**
AL-US

**BFM**



50DG162C2/7EFB

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jeweiry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en//PrintIFrame.html                                2/24/2011

Page 1 of 1

From:   (205) 250-8336          Origin ID: CZCA
Mary-Noel Sellers
Baker Donelson Bearman Caldwell
420 20th Street North
Suite 1600
Birmingham, AL 35205

**FedEx**
Express

**E**

J11101012220225

Ship Date: 24FEB11
ActWgt: 1.0 LB
CAD: 101572210/INET3130

Delivery Address Bar Code

SHIP TO: (205) 250-8336          BILL SENDER
**JERRELL BRANCH**

**11920 COUNTY ROAD 5**

**ASHLAND, AL 36251**

Ref #
Invoice #     011808 1039341-000226
PO #
Dept #



TRK#   **7968 0212 4835**
0201

**39 ANBA**

MON - 28 FEB  A6
** 2DAY **
RES
36251
AL-US
BHM

50DG1/82C2/7EFB

---

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EXHIBIT I



**BAKER
DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

WELLS FARGO TOWER
420 TWENTIETH STREET NORTH
SUITE 1600
BIRMINGHAM, ALABAMA 35203
PHONE: 205.328.0480
FAX: 205.322.8007

www.bakerdonelson.com

ERIC L. PRUITT
Direct Dial: (205) 244-3836
Direct Fax: (205) 488-3836
E-Mail Address: epruitt@bakerdonelson.com

September 28, 2011

*__Via Federal Express__*

D & B Farm Center
12075 County Road 5
Ashland, Alabama  36251

Jerrell Branch
11920 County Road 5
Ashland, Alabama  36251

Gregory Scott Denney
12134 County Road 5
Ashland, Alabama  36251

### *REITERATION OF DEMAND FOR PAYMENT*

**Re:  Loan ("Loan 18") in the original stated principal amount of $150,000.00 from Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, National Association ("Lender") to D & B Farm Center, L.L.C. ("D&B") and Gregory Scott Denney ("Denney", and together with D&B, collectively, "Borrower"), as guaranteed by Jerrell Branch ("Guarantor", and together with Borrower, collectively, "Obligors") and Loan ("Loan 34" together and collectively with Loan 18, the "Loans") in the original stated principal amount of $50,000.00 from Lender to Borrower, as guaranteed by Guarantor**

To Whom It May Concern:

As you are aware, this firm represents Lender in connection with the Loans. Lender, by letter from this firm dated February 24, 2011, (the "Demand Letter"), notified Obligors that Events of Default have occurred under the Loan Documents, including, without limitation, failure to make payments when due under the Loans.  Lender also demanded payment of the Loan Obligations.  Capitalized terms not defined herein shall have the meanings provided in the Demand Letter.

Obligors have not satisfied the Loan Obligations. Accordingly, Lender hereby reiterates demand for the immediate payment of all amounts due under the Loan Documents, including, without limitation, the entire outstanding principal balance of the Notes, together with all accrued and unpaid interest, late charges and all other amounts due and owing under the Loan Documents.

B MNS 995820 v1
1039341-000490 09/28/2011

ALABAMA · GEORGIA · LOUISIANA · MISSISSIPPI · TENNESSEE · WASHINGTON, D.C. ·

September 28, 2011
Page 2

Accordingly, Lender hereby reiterates demand for the immediate payment of all amounts due under the Loan Documents, including, without limitation, the entire outstanding principal balance of the Notes, together with all accrued and unpaid interest, late charges and all other amounts due and owing under the Loan Documents (collectively, the "Debt") calculated as follows:

Loan 18

| | | |
|---|---|---|
| Principal as of September 26, 2011 | $ | 102,999.74 |
| Interest as of September 26, 2011 | $ | 2,558.82 |
| Late fees as of September 26, 2011 | $ | 267.81 |
| Expenses as of September 26, 2011 | $ | 754.85 |
| Delinquent Property Taxes | $ | 367.66 |
| Search fee | $ | 347.00 |
| IVR Valuation fee | $ | 165.00 |
| Total as of September 26, 2011 | $ | 107,460.88 |

Per Diem Amount: $21.32

Loan 34

| | | |
|---|---|---|
| Principal as of September 26, 2011 | $ | 30,833.41 |
| Interest as of September 26, 2011 | $ | 242.60 |
| Late fees as of September 26, 2011 | $ | 90.50 |
| Expenses as of September 26, 2011 | $ | 388.85 |
| Total as of September 26, 2011 | $ | 31,555.36 |

Per Diem Amount: $2.36

Interest continues to accrue at the Per Diem amounts on the outstanding principal balances of the Notes until payment in full is received by Lender in good and immediately available funds.

B MNS 995820 v1
1039341-000490 09/28/2011

September 28, 2011
Page 3

  This letter constitutes formal demand upon Obligors to pay the Debt immediately to Lender together with all applicable charges and all costs, expenses and attorneys' fees incurred by Lender in connection with collection of the indebtedness as provided for in the Loan Documents (collectively, the "Loan Obligations"). Please contact me for the current total of the Loan Obligations prior to sending payment.

  If the Loan Obligations are not paid immediately, then Obligors are advised that Lender intends to exercise its remedies available under the Loan Documents or otherwise at law or in equity, and furthermore, additional attorneys' fees and other costs of collection incurred by Lender shall accrue for which Obligors may be liable. In the event that certain property described in the Security Instruments is sold at a judicial or nonjudicial foreclosure sale for an amount insufficient to satisfy the entire unpaid principal balance of and all accrued but unpaid interest of the Notes and all other amounts due thereunder, Obligors will be liable for the deficiency, subject to any limitations on liability, including, but not limited to, constitutional limitations, statutory limitations and/or any limitations on liability contained within the Loan Documents.

  All of Lender's claims, demands and accruals regarding the above-referenced Loan Obligations, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

  Lender reserves the right to exercise, in such order as Lender elects, any one or more of the remedies available to Lender pursuant to the Loan Documents or otherwise at law or in equity, and nothing contained in this letter shall constitute a waiver of any rights of Lender to pursue such rights and remedies. Any negotiations between Obligors and Lender shall not constitute a waiver of Lender's right to exercise its rights and remedies under the Loan Documents or otherwise at law or in equity, including, but not limited to, those described in this letter. Any such waiver shall not be effective unless set forth in writing, duly executed by an authorized representative of Lender. Obligors shall not be entitled to rely upon any verbal statements made or purported to be made by or on behalf of Lender in connection with any alleged agreement by or on behalf of Lender to refrain from exercising any of its rights under the Loan Documents or otherwise at law or in equity. Please be advised that no past or future delay or omission in the exercise of any right or remedy accruing to Lender as a result of any default is intended to constitute a waiver of any right or remedy accruing to Lender as a result of that default or any other default.

  Payment to Lender of less than all Loan Obligations due and owing under the Loans, together with all interest accrued thereon, should not be construed as an accord and satisfaction or as Lender's agreement to accept a lesser amount as payment in full of the Debt. Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment may not be deemed to be an accord and satisfaction. Lender may accept any such payment or turnover of the collateral securing the Loan without prejudice to its rights to receive the balance of all Loan Obligations due under the terms of the Loan Documents or to pursue its remedies.

B MNS 995820 v1
1039341-000490 09/28/2011

September 28, 2011
Page 4

Please note that we have no obligation or duty to inform Obligors of Lender's intentions to exercise its rights and remedies under the Loan Documents. We are, however, doing so in this letter as an accommodation to Obligors. Obligors shall not be entitled to expect notice in the future of Lender's elections or specifications under any of the Loan Documents by reason of Lender's election to provide notices and specifications in this letter.

**THIS FIRM AND LENDER ARE ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE LOAN DOCUMENTS AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, TERMS AND PROVISIONS CONTAINED WITHIN THE LOAN DOCUMENTS AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. Section 362(b)(11), if applicable.

Neither this letter nor any statement by or on behalf of Lender as to the amount due and owing under the Loan Documents, (i) shall constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents or otherwise at law or in equity; or (ii) shall constitute an accord and satisfaction or waiver of any rights of Lender under the Loan Documents.

Please contact me if you have any questions concerning the matters contained in the letter. Your prompt attention to these serious matters is appreciated.

Sincerely,

Eric L. Pruitt

cc:
Julian Bennett